**UNITED STATES of America, Appellee,**

v.

**Erwin SANCHEZ, Defendant, Appellant.**

**No. 90–1974.**

United States Court of Appeals,
First Circuit.

Heard March 4, 1991.

Decided Aug. 27, 1991.

Russell M. Sollitto with whom Joseph A. Bevilacqua, Jr., Providence, R.I., was on brief, for defendant, appellant.

Margaret E. Curran, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., and Charles A. Tamuleviz, Asst. U.S. Atty., Providence, R.I., were on brief, for appellee.

Before CAMPBELL and CYR, Circuit Judges, and COFFIN, Senior Circuit Judge.

COFFIN, Senior Circuit Judge.

Defendant Erwin Sanchez appeals his conviction for possessing cocaine with intent to distribute in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). He asserts two grounds for reversal: first, that the district court wrongly refused to suppress a quantity of cocaine seized in violation of his Fourth Amendment rights, and, second, that the court erred in denying his motion for acquittal because the evidence was insufficient to prove knowing possession of the cocaine. We affirm.

## I. Background

On the afternoon of March 20, 1990, defendant Sanchez was stopped for speeding as he drove a black Camaro along Interstate Route 95 in Rhode Island. State Trooper Underhill approached the car on the driver's side while Detective Denniston went to the passenger's side. In response to Underhill's request, defendant produced

his valid New York driver's license and retrieved the vehicle registration from inside the center armrest. The car was registered in Massachusetts to Rafaela Penta.

Trooper Underhill then questioned Sanchez about the car. The defendant reported that the car was owned by "Penta," but he did not know her full name, address or telephone number. He claimed that a friend in New York named "Nana" lent him the car, but he did not know Nana's full name, address or phone number either. Underhill testified that Sanchez appeared extremely nervous throughout the questioning and, with his suspicions aroused by the exchange, the trooper asked Sanchez to get out of the car.

The defendant then was questioned again by Underhill and Denniston together. Sanchez repeated that the car was loaned to him in New York by a friend named Nana, and that it belonged to Nana's girlfriend, Penta. He told the officers that he was driving to the Dartmouth, Massachusetts area to meet a friend named Robin, with whom he planned to stay for three days. Although he did not know Robin's last name, address or telephone number, he claimed to know how to find his house. Sanchez had no extra clothes with him, and told the officers he planned to borrow some from Robin. The only "luggage" in the car was a bag in the back containing old cheese, a bottle of liquor and photographs.

At some point, the officers retrieved a slip of paper with a phone number from the front seat of the Camaro, and arranged for someone at the state police barracks to call the number. The call was answered by someone who identified himself only as "Eduardo," and who hung up when asked about Sanchez and the Camaro. Computer checks on Sanchez's license and the car registration revealed nothing suspicious.

With Sanchez's consent, Denniston did a cursory search of the car, which turned up nothing unusual. The officers nevertheless decided to bring the car to the police barracks for further investigation. Sanchez drove the Camaro with Denniston in the passenger seat, and Underhill followed in the cruiser. Shortly after their arrival at the barracks, Sanchez signed a form consenting to another search of the car. Underhill's drug detection canine alerted near the car, and a subsequent search led to discovery of a kilogram of cocaine hidden behind a rear panel. Sanchez then was arrested.

Sanchez sought to suppress the cocaine on the ground that it was obtained in violation of his fourth amendment rights. He argued that the officers lacked probable cause to bring either him or the car back to the police barracks and, consequently, that the drugs should have been excluded from evidence as the fruit of his unlawful arrest and the car's unlawful seizure.

The district court denied the suppression motion, concluding that Sanchez had failed to establish a reasonable expectation of privacy in either the Camaro or the cocaine and thus lacked standing to challenge the search of the car. Sanchez appeals that ruling and also seeks reversal of his conviction based on a paucity of evidence showing that he knowingly possessed the concealed cocaine.

## II. *Suppression of the Cocaine*

In reviewing a district court's denial of a suppression motion, we must uphold its findings of fact unless they are clearly erroneous, *United States v. Cruz Jimenez*, 894 F.2d 1, 7 (1st Cir.1990). The court's ultimate conclusion, however, is subject to plenary review, *United States v. Curzi*, 867 F.2d 36, 42 (1st Cir.1989). Denial of a suppression motion should be upheld "if any reasonable view of the evidence supports the trial court's decision," *United States v. Veillette*, 778 F.2d 899, 902 (1st Cir.1985). Applying these principles here, we are unable to disturb the trial court's decision.

Because Fourth Amendment rights are personal and may not be asserted vicariously, the first inquiry in examining a fourth amendment claim is whether the defendant had a legitimate expectation of privacy in the area searched or the item seized. *Rakas v. Illinois*, 439 U.S. 128, 138–48, 99 S.Ct. 421, 427–33, 58 L.Ed.2d

387 (1978); *United States v. McHugh*, 769 F.2d 860, 864 (1st Cir.1985). A defendant who fails to demonstrate a sufficiently close connection to the relevant places or objects will not have "standing" to claim that they were searched or seized illegally.[1] Thus, in this case, Sanchez would be entitled to challenge the legality of the search of the Camaro only if he met his burden of showing that he reasonably anticipated privacy in the car.[2] *See Rakas*, 439 U.S. at 130–31 n. 1, 99 S.Ct. at 424 n. 1 (burden of proving a reasonable expectation of privacy is on the proponent of a motion to suppress); *United States v. Garcia–Rosa*, 876 F.2d 209, 219 (1st Cir.1989), *vacated on other grounds*, —— U.S. ——, 111 S.Ct. 377, 112 L.Ed.2d 391 (1990), *aff'd*, 930 F.2d 951 (1st Cir.1991) (same). The district court found that Sanchez did not sustain this burden.

We have in the past listed various factors that are relevant to the standing determination:

> ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case.

*United States v. Aguirre*, 839 F.2d 854, 856–57 (1st Cir.1988).

 In rejecting defendant's claim, the district court relied heavily on Sanchez's failure to show that he had the owner's permission to use the car. The court accepted defendant's repeated assertion that he had been given the car by Nana, whose girlfriend, Penta, was the owner. The court thus found that "at best the defendant was operating the vehicle with the authority of a person who himself had been given the authority to operate the vehicle by somebody else."[3] The court further noted the lack of evidence showing that Sanchez had used the car previously or had control or responsibility for the vehicle "other than the fact he was driving it when he was stopped."

We consider this to be a close case. In his favor, Sanchez appropriately emphasizes his possession of the car, his ability as the sole occupant to control or exclude others' use of the vehicle, and the fact that he was driving alone on a long trip at a great distance from the vehicle's owner. The fact that he was alone distinguishes this case from *United States v. Lochan*, 674 F.2d 960 (1st Cir.1982), in which we found no legitimate expectation of privacy on the part of the driver of a car whose owner was a passenger. We noted in *Lochan* that the owner's presence "diluted" evidence of the defendant's control of the vehicle. *Id.* at 965. That distinction obviously strengthens defendant's claim here.

Despite this difference from *Lochan*, we believe the circumstances, on balance, tip slightly in favor of the same result. As in *Lochan*, Sanchez had only a casual posses-

---

1. Technically, the concept of "standing" has not had a place in Fourth Amendment jurisprudence for more than a decade, since the Supreme Court in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), indicated that matters of standing in the context of searches and seizures actually involved substantive Fourth Amendment law. The Court thus dispensed with standing as "a discrete analytic element apart from the merits" in such cases, *United States v. Bouffard*, 917 F.2d 673, 675 (1st Cir.1990), instead requiring a defendant to prove a legitimate expectation of privacy as a prerequisite to challenging assertedly unlawful police conduct. We therefore use the term "standing" somewhat imprecisely to refer to this threshold substantive determination.

2. The government conceded at oral argument that the officers had no probable cause to detain Sanchez or the car. His own illegal seizure does not help his effort to suppress the cocaine, however, because the evidence resulted from the seizure and search of the *car* and not from his personal detention.

3. Detective Denniston testified at the suppression hearing that after his arrest, in conversation in Spanish with an immigration officer, Sanchez stated that he had permission from Penta to use the car. The district court apparently gave little weight to this alternative version of how Sanchez got the car and we find no clear error in its decision to do so. We note, moreover, that at oral argument, defendant's counsel stated that Sanchez had obtained the car from Nana.

sion of the car. He did not own it, nor, as the district court observed, was there evidence that he had used the car on other occasions. He gained possession from a friend about whom he knew very little—not even his last name. Although Sanchez's control of the vehicle presumably was greater than Lochan's because Sanchez was driving unaccompanied by the car's owner, this factor is offset by the fact that Sanchez did not have direct authority from the owner to use the vehicle. In addition, Sanchez claimed no interest in the drugs contained within the car.[4] Nor did he exhibit an expectation of privacy in the bag of items stored in the hatchback area, which he displayed to the officers on his own initiative.

Had Sanchez demonstrated a more intimate relationship with the car's owner or a history of regular use of the Camaro—from which a presumption of permission could be drawn—we would have been likely to conclude that the totality of the circumstances established a legitimate expectation of privacy.[5] A pattern of permission, together with his sole control on a long trip, would have minimized the informal and temporary nature of this specific acquisition of the car. On the present record, however, the factors fall short, leaving Sanchez unable to meet his burden of proof. *See United States v. Arango*, 912 F.2d 441, 445 (10th Cir.1990) (no reasonable expectation of privacy where defendant failed to introduce evidence that truck lawfully possessed); *United States v. Obregon*, 748 F.2d 1371, 1374–75 (10th Cir.1984) (defendant driver of rental car had no reasonable expectation of privacy where car had been rented by unrelated third party and no evidence presented of any agreement with rental company allowing defendant lawfully to drive car). *Cf. United States v. Miller*, 821 F.2d 546, 548–49 (11th Cir.1987) (citing cases) (finding reasonable expectation of privacy where defendant was sole occupant of car driven with permission of owner); *United States v. Martinez*, 808 F.2d 1050, 1056 (5th Cir.1987) (finding reasonable expectation of privacy where defendant's boyfriend, owner of the car, testified that she used it with his permission); *United States v. Rose*, 731 F.2d 1337, 1343 (8th Cir.1984) (defendant had permission of his sister, the owner, and drove the car "as much as two or three times a week").

We therefore conclude that the district court correctly found that Sanchez lacked a sufficient expectation of privacy in the car to entitle him to challenge its seizure and search.

### III. *Judgment of Acquittal*

■ Defendant moved for judgment of acquittal claiming that the government's evidence was insufficient to prove that he knowingly possessed the cocaine found in the car. We review the district court's denial of the motion using the identical standard employed to measure the sufficiency of evidence supporting a guilty verdict. *United States v. St. Michael's Credit Union*, 880 F.2d 579, 584 (1st Cir.1989) (quoting *United States v. McNatt*, 813 F.2d 499, 502 (1st Cir.1987)). Accordingly, we must determine whether, viewing all of the evidence in the light most favorable to the government, including all reasonable inferences to be drawn from such evidence, a rational trier of fact could have found guilt

---

4. Sanchez could have testified at the suppression hearing that he had some interest in the cocaine without concern that that testimony would be used as direct evidence against him at trial. *United States v. Garcia–Rosa*, 876 F.2d 209, 219 (1st Cir.1989), *vacated on other grounds*, —— U.S. ——, 111 S.Ct. 377, 112 L.Ed.2d 391 (1990), *aff'd*, 930 F.2d 951 (1st Cir. 1991); *United States v. Lochan*, 674 F.2d 960, 965 n. 6 (1st Cir.1982).

5. For example, in *United States v. Williams*, 714 F.2d 777, 779 n. 1 (8th Cir.1983), the car at issue was owned by an individual who lived with the defendant's nephew. The district court found that the nephew, with the owner's knowledge, occasionally permitted the defendant to use the car and that such permission was given on the day in question. The court further found that this approval provided the defendant with a sufficient expectation of privacy in the vehicle to have standing. In this case, however, Sanchez did not meet his burden of showing acquiescence by Penta in his use of the car.

beyond a reasonable doubt. *United States v. Mena,* 933 F.2d 19, 23 (1st Cir.1991).

We need not dwell on this issue because the evidence clearly was ample. Sanchez was both alone and driving the car in which the cocaine was hidden, permitting an inference that he knew about and possessed the drug. *See United States v. Barnes,* 890 F.2d 545, 549 (1st Cir.1989); *Lochan,* 674 F.2d at 966.[6] He appeared nervous when speaking to law enforcement officers, and claimed to be enroute to visit a friend whose last name he did not know. In addition, he brought no clothing or toiletries with him for what was supposed to be a three-day visit, "a suspicious circumstance that could give rise to an inference of guilty knowledge," *Lochan,* 674 F.2d at 966.

Although a finding of guilt in these circumstances was not inevitable, we conclude that the evidence was sufficient to support the jury's finding that Sanchez knowingly possessed the cocaine.

*Accordingly, the judgment of the district court is AFFIRMED.*

---

6. It is settled law "that a prosecutor may simultaneously maintain that a defendant criminally possessed the seized good, but was not subject to a Fourth Amendment deprivation, without legal contradiction," *United States v. Salvucci,* 448 U.S. 83, 90, 100 S.Ct. 2547, 2552, 65 L.Ed.2d 619 (1980). Therefore,

[t]he seeming contradiction between finding that control over a motor vehicle by a nonowner driver gives rise to an inference of knowledge of the vehicle's contents and finding that the driver does not have an expectation of privacy in the vehicle or its contents is irrelevant.

*Lochan,* 674 F.2d at 966 n. 7.