UNITED STATES of America, Appellee,

v.

William J. DONOVAN, Defendant, Appellant.

No. 91–1574.

United States Court of Appeals, First Circuit.

Heard Oct. 8, 1992.

Decided Jan. 13, 1993.

Jonathan R. Saxe, with whom Twomey and Sisti Law Offices was on brief, for defendant, appellant.

Patrick M. Walsh, Asst. U.S. Atty., with whom Jeffrey R. Howard, U.S. Atty., and Peter E. Papps, First Asst. U.S. Atty., were on brief, for appellee.

Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and CYR, Circuit Judge.

SELYA, Circuit Judge.

Defendant-appellant William J. Donovan, Jr., a banker, was convicted in the district court on five counts of willful failure to file currency transaction reports (CTRs) as re-

quired by law. The offenses were allegedly committed as part of a pattern of illegal activity respecting banking transactions which, individually, involved more than $10,000 in cash and, collectively, exceeded $100,000 within a twelve-month period. Donovan appeals, contending that the lower court erred (1) in instructing the jury about the willfulness requirement of the currency reporting laws, and (2) in permitting the government to cross-examine him, and introduce evidence, about events that occurred subsequent to the offenses of conviction. Finding Donovan's assignments of error to be bootless, we affirm the judgment below.

## I. FACTUAL PRECIS

We begin with an overview of the facts, taken in the light most supportive of the verdict. *See United States v. Mena,* 933 F.2d 19, 21–22 (1st Cir.1991); *United States v. Jimenez–Perez,* 869 F.2d 9, 10 (1st Cir.1989).

At the time of the transactions in question, Donovan was the president and chief executive officer of Atlantic Trust Company, a federally insured bank based in Newington, New Hampshire. His friend, Dr. Edward Saba, was a physician practicing in Lowell, Massachusetts. Donovan had long attempted to convince Saba to invest a portion of the considerable savings that he had amassed. When Donovan learned about the availability of a large tract of land in Newington, he persuaded Saba to direct part of his savings toward acquisition and development of the tract. In the meantime, Donovan would secure the zoning variances, devise the business plan, and do the legwork necessary to subdivide the parcel into approximately fifteen lots. The partners' plan required an estimated cash infusion of $450,000, all furnished by Saba.

So it was that, in March of 1987, Saba began to invade the caches of hard-earned cash that he had squirreled away in various safe deposit boxes. Donovan came to Lo-

well several times, counted bundles of cash in Saba's presence, and took the money to Atlantic Trust for deposit. On five occasions, the deposits exceeded $10,000.[1] Each time, Donovan personally handled the crediting of the deposit to Saba's account and prepared the currency for transshipment to Atlantic Trust's correspondent, Bank of New England (which served as Atlantic Trust's depository with the Federal Reserve). In so doing, Donovan bypassed conventional channels, thus circumventing the bank's internal auditing and tracking mechanisms. He also neglected to file the CTRs required by federal law.

Over a period of time, several bank employees became suspicious of the unorthodox methods used in handling Saba's funds. These employees tried to discuss their concerns with Donovan, but he curtly dismissed their qualms. When Donovan's tenure at the bank ended, his successor arranged for an outside audit. In the audit's aftermath, Donovan's activities came to the attention of federal authorities. The instant indictment ensued.

## II. INDICTMENT AND TRIAL

Donovan was charged with violating 31 U.S.C. § 5313(a) (1988) and the regulations thereunder. The statute provides in relevant part:

When a domestic financial institution is involved in a transaction for the payment, receipt, or transfer of United States coins or currency ... in an amount, denomination, or amount and denomination, or under circumstances the Secretary prescribes by regulation, the institution ... shall file a report on the transaction at the time and in the way the Secretary prescribes. A participant acting for another person shall make the report as the agent or bailee of the person and identify the person for whom the transaction is being made.

31 U.S.C. § 5313(a) (1988). The concomitant regulation states:

---

1. The five deposits were in the amounts of $30,000, $91,000, $30,000, $55,000, and $30,000, respectively. They were made at various times between March 13, 1987 and April 21, 1987. In

addition, Saba deposited the proceeds of a maturing certificate of deposit, some $193,000, into an account at Atlantic Trust.

Each financial institution other than a casino or the Postal Service shall file a report of each deposit, withdrawal, exchange of currency or other payment or transfer, by, through, or to such financial institution which involves a transaction in currency of more than $10,000.

31 C.F.R. 103.22(a)(1) (1985).[2] A willful violation of the statute and regulation carries criminal penalties:

A person willfully violating this subchapter or a regulation prescribed under this subchapter ... shall be fined not more than $1000, imprisoned for not more than one year, or both.

31 U.S.C. § 5322(a) (1988).

At trial, Donovan conceded that he was required by law to file CTRs for the five cash deposits at issue. He contended, however, that he made an innocent mistake (or, more accurately, a series of innocent mistakes). As Donovan told it, he misunderstood the import of the regulatory scheme; knowing Saba to be an honest person who had garnered the money lawfully and paid taxes on it—facts which the government did not dispute—Donovan thought it was unnecessary to report the transactions. If this were so, then the charges were improvidently prosecuted. *See id.* (specifying that willfulness is an element of the offense). A jury, disbelieving the tale, found the appellant guilty on all five counts.

III. [This Part of the panel opinion is superseded by the opinion of the en banc court]

IV. THE ADMISSION OF CERTAIN EVIDENCE

■ Donovan's second ground of appeal concerns the admission of evidence about events occurring subsequent to the offenses of conviction. To put the matter into perspective, we recount some additional facts. Saba's initial outlays were sufficient to fund the land acquisition. But, incremental expenses began to accrete. To defray these costs, Saba supplied an extra $100,000 for the project. Donovan then opened a $50,000 line of credit secured by a mortgage on the property, signing an affidavit in which he attested to the business purpose of the loan.

As matters turned out, Donovan played fast and loose with Saba. He diverted some of the $100,000 to his own use and employed the $50,000 line-of-credit advance for a variety of personal ends unrelated to the partnership's business. Among other things, Donovan used the misdirected money for a down payment on a boat slip, the purchase of an automobile, and partial satisfaction of a personal loan. The timing of these expenditures was significant: when Donovan executed the "business purpose" affidavit, for instance, he had already written a check for the boat slip (drawn in anticipation of funding the line of credit).

The district court permitted the prosecution, over objection, to cross-examine Donovan about these events. The court also admitted as full exhibits a number of documents relating thereto, including the affidavit. Although less than pellucidly clear about the legal fundament on which its ruling rested, the court, in a manner evocative of Fed.R.Evid. 608(b) (which provides, *inter alia,* that the district court may permit cross-examination about specific instances of a witness's conduct, if probative of untruthfulness), said it was allowing the evidence for impeachment purposes.

We need not explore the interstices of Rule 608(b) because we believe the evidence was admissible on a different rationale. Donovan's defense had three foci, viz. (1) intent, i.e., he denied willfully violating the reporting requirements; (2) motive, i.e., he asserted that he had nothing to gain from ducking those requirements; and (3) mistake, i.e., he claimed that he misunderstood the reporting laws. The testimony elicited by the cross-examination, and the exhibits related thereto, were relevant to assessing these issues—most specifically, Donovan's state of mind in failing to report

---

**2.** The regulation exempts from the reporting requirements "[d]eposits or withdrawals of currency from an existing account by an established depositor who ... operates a retail type of business." 31 C.F.R. § 103.22(b)(2)(i) (1985). The defendant has not contended that Saba was an exempt customer under this, or any other, section of the regulation.

the currency transactions as required by law. The evidence was, therefore, admissible under Fed.R.Evid. 404(b).[3]

The appellant offers four reasons why Rule 404(b) was inapposite: the district court did not resort to it; the events in question postdated the offenses of conviction; the events lacked special relevance to those offenses; and the evidence was unduly prejudicial. We find none of these reasons persuasive.

## A.

The appellant's first contention need not detain us long. To be sure, the record is tenebrous as to the district court's theory of admissibility. Nonetheless, it is the rule in this circuit that, so long as the decision to admit evidence is proper under some theory, the basis upon which it was actually admitted by the district court is ordinarily of little moment. Thus, in *United States v. Walsh*, 928 F.2d 7 (1st Cir. 1991), we concluded that, because certain evidence was admissible under Fed.R.Evid. 404(b), it was "unnecessary to resolve the disagreement as to which ground the district court had in mind" in permitting its introduction. *Id.* at 10 n. 10. To the same effect is *United States v. Nivica*, 887 F.2d 1110, 1127 (1st Cir.1989), *cert. denied*, 494 U.S. 1005, 110 S.Ct. 1300, 108 L.Ed.2d 477 (1990), where we wrote that, "if the trier incorrectly admits evidence under a hearsay exception, we will not reverse so long as the material was properly admissible ... under a different rule of evidence." Other circuits agree with this practical, common sense approach. *See, e.g., United States v. Cardenas*, 895 F.2d 1338, 1345 (11th Cir. 1990) (" 'If the admission was proper on

any ground, it is of no consequence that the court might have given the wrong reason for its admission.' ") (quoting *Navajo Freight Lines, Inc. v. Mahaffy*, 174 F.2d 305, 307 (10th Cir.1949)).

In this case, the appellant was not unfairly prejudiced by the district court's resort to an arguably different theory of admissibility; after all, permitting the government to offer the evidence strictly for impeachment purposes was a more circumscribed use than Rule 404(b) would have allowed. Hence, if the court's theory of admissibility was erroneous, the error favored the appellant. *Cf., e.g., United States v. Oppon*, 863 F.2d 141, 148 (1st Cir.1988). Ordinarily, an error in the admission of evidence does not afford a ground for reversal at the behest of a party who benefitted from the error. *See* Fed.R.Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected...."). Furthermore, while it is true that the district court made no explicit findings under Rule 404(b), such findings are not an invariable prerequisite to the admission of Rule 404(b) evidence. *See, e.g., United States v. De La Cruz*, 902 F.2d 121, 123 (1st Cir.1990); *United States v. Foley*, 871 F.2d 235, 238 (1st Cir.1989). Here, the record is sufficiently translucent that we can work the Rule 404(b) calculus unaided.[4]

## B.

The appellant's second contention is equally unavailing. The fact that the acts took place subsequent to the transactions for which Donovan was convicted does not thwart the Rule 404(b) regime.[5] In *United*

---

**3.** The rule provides:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Fed.R.Evid. 404(b).

**4.** We note that the court did refer to the evidence as tending to show the absence of "honest

mistake"—a recognized basis for allowing evidence to be introduced under Rule 404(b).

**5.** The challenged evidence concerned events which occurred within a year of the offenses of conviction. Thus, they were sufficiently contiguous in time, if otherwise relevant, to be admitted. *See, e.g., United States v. Rodriguez–Estrada*, 877 F.2d 153, 156 (1st Cir.1989) ("When, as in this case, the linked incident occurs close in time, and is highly relevant, to the charged conduct, the argument for admissibility is powerful."); *United States v. Fields*, 871 F.2d 188,

*States v. Bank of New England*, 821 F.2d 844, 858 (1st Cir.), *cert. denied*, 484 U.S. 943, 108 S.Ct. 328, 98 L.Ed.2d 356 (1987), we stated that Rule 404(b) "has been held to allow the admission of acts or conduct subsequent to the offense charged to prove intent to commit the alleged illegal act." *See also id.* at 859 ("Rule 404(b) allows the admission of subsequent conduct to show a defendant's mental state at the time of the charged offense...."); *cf. Mena*, 933 F.2d at 25 n. 5 (subsequent events may be probative of a defendant's motive or intent at an earlier time).

In so holding, we do no more than vivify the well-settled concept that Rule 404(b) is not to be read grudgingly. As we stated in *United States v. Fields*, 871 F.2d 188 (1st Cir.), *cert. denied*, 493 U.S. 955, 110 S.Ct. 369, 107 L.Ed.2d 355 (1989), a case where the district court permitted evidence of postconspiracy activity to show the existence of the conspiracy and the participation of a coconspirator therein, Rule 404(b) is a rule "of inclusion which allows the introduction of evidence of other crimes, wrongs, or acts unless the evidence tends to only prove criminal disposition." *Id.* at 196. *See also Huddleston v. United States*, 485 U.S. 681, 688–89, 108 S.Ct. 1496, 1500–01, 99 L.Ed.2d 771 (1988) ("Congress was not nearly so concerned with the potential prejudicial effect of Rule 404(b) evidence as it was with ensuring that restrictions would not be placed on the admission of such evidence."); *United States v. Flores Perez*, 849 F.2d 1, 4 (1st Cir.1988) (when evidence of other wrongs is introduced to show knowledge, motive, or intent, Rule 404(b) has "been construed broadly").

### C.

■ Inasmuch as the appellant's third and fourth objections lie at the heart of the matter, we treat with them in the ensemble. Federal courts undertake a bifurcated inquiry in deciding questions of admissibility under Rule 404(b). *See, e.g., United States v. Rodriguez–Estrada*, 877 F.2d 153, 155 (1st Cir.1989); *Fields*, 871 F.2d at 196; *Oppon*, 863 F.2d at 146. First, the evidence must possess some "special relevance," that is, it must be "offered not merely to show the defendant's propensity for crime but to establish some material issue." *United States v. Devin*, 918 F.2d 280, 286 (1st Cir.1990). Once it is established that the evidence has such special relevance, its probative worth must then be balanced "against the countervailing considerations enumerated in Rule 403 in order to gauge admissibility." *Id.* We think that the disputed evidence clears both hurdles.

1. *Special Relevance.* The cross-examination and related extrinsic evidence were particularly relevant to Donovan's motive, intent, and defense of mistake.[6] The material adduced could assist in persuading a jury that Donovan's investment idea reflected a scheme to obtain funds from Saba which he (Donovan) could use in his self-interest. The subsequent acts, especially the false swearing in the affidavit, reflected a conscious disregard of any legal requirements that might hinder Donovan's ability to use Saba's property for his immediate benefit. A jury could conclude, from hearing the cross-examination and seeing the evidence about the conversion of Saba's property, that Donovan sought to minimize all avenues of oversight which would increase his accountability to anyone—be it Saba, the bank, or federal authorities. A jury could also conclude, therefore, that Donovan was not in fact mistaken about the obligations of the reporting laws and regulations, but that he willfully sought to skirt them because he considered them unimportant and feared that conformity with

198 (1st Cir.) (admitting evidence of subsequent acts that occurred three years after the charged crimes), *cert. denied*, 493 U.S. 955, 110 S.Ct. 369, 107 L.Ed.2d 355 (1989).

**6.** We note that, in the context of Donovan's defense, intent and mistake are sisters under the skin. Such a sibling relationship is not unusual; when mistake is asserted as a defense to crimi-

nal charges, it is often proffered to negate an intent requirement. *See generally* 22 C. Wright & K. Graham, *Federal Practice and Procedure* § 5247, at 517–18 (1978) ("'[A]bsence of mistake or accident' ... is simply a special form of the exception that permits the use of other crimes to prove intent.").

them would hinder or prevent his use of Saba's money for his own benefit.[7] In short, because the currency transactions and the conduct which occurred in their wake could plausibly be viewed as part of a common scheme, the challenged evidence was specially relevant to shed light on the appellant's intent at earlier stages of the scheme.

Before leaving this prong of the Rule 404(b) test, we note that the cross-examination and associated evidence were also specially relevant to depict the broader context in which the charged conduct took place. We have frequently allowed Rule 404(b) evidence to be employed for such purposes. *See, e.g., Devin,* 918 F.2d at 287 (" 'other acts' evidence which is closely bound up with the crimes charged is eligible for admissibility under Rule 404(b)"); *Rodriguez–Estrada,* 877 F.2d at 156 (similar); *Fields,* 871 F.2d at 194 (evidence of other acts admissible if it "is necessary to complete the picture of the crime on trial"); *United States v. Reveron Martinez,* 836 F.2d 684, 687–88 (1st Cir.1988) (details of uncharged acts admissible " 'to show the chain of events forming the context' ") (citation omitted); *United States v. D'Alora,* 585 F.2d 16, 20 (1st Cir.1978) (similar).

■ 2. *Probative Value/Prejudicial Effect.* Although the evidence possessed the special relevance required under Rule 404(b), it must still be scrutinized under Fed.R.Evid. 403.[8] Such scrutiny proceeds, of course, on the understanding that an appellate tribunal can reverse on this basis only if admitting the evidence was tantamount to an abuse of discretion. *See De La Cruz,* 902 F.2d at 124; *Rodriguez–Estrada,* 877 F.2d at 155–56; *Fields,* 871 F.2d at 196. We are unable to say that the probative value/prejudicial effect seesaw

was so out of kilter in this case as to call for corrective measures.

To dwell upon the point would serve no useful purpose. The trial judge refused to allow the prosecution to introduce the disputed evidence during its case in chief. It was only after Donovan took the witness stand and made "honest mistake" the centerpiece of his defense that the court permitted the government to show the panoramic picture of the defendant's dealings with Saba. The picture, to be sure, was not pretty. It placed Donovan in a harshly unflattering light. But, "[b]y design, all evidence is meant to be prejudicial; it is only *unfair* prejudice which must be avoided." *Rodriguez–Estrada,* 877 F.2d at 156. Having in mind the limiting instruction given by the court—an instruction which was more restrictive than Rule 404(b) demanded—we do not believe the border separating fairness from unfairness was violated in this instance.

In fine, from the distant vista of an algid appellate record, we are unprepared to say that, as a matter of discretion, the jury should have been forced to pass upon the honesty of Donovan's claimed "mistake" in a vacuum, shielded from a full account of his coarse course of subsequent conduct. *Compare, e.g., United States v. Sanchez–Robles,* 927 F.2d 1070, 1077–78 (9th Cir. 1991); *Doty v. Sewall,* 908 F.2d 1053, 1058 (1st Cir.1990); *Cardenas,* 895 F.2d at 1342; *United States v. McNeill,* 728 F.2d 5, 12–13 (1st Cir.1984).

## V. CONCLUSION

We need go no further. From aught that appears after careful attention to the record, the briefs, and the parties' oral arguments, the appellant was fairly tried

---

7. The following exchange, which took place during Donovan's cross-examination, typified the disputed evidence:

> [Prosecutor]: Do you regard that affidavit that I showed you ... do you regard that like the currency transaction report, as just one of those silly forms that people have to put up with when they conduct business transactions?
>
> [Donovan]: I'm afraid I do.

8. The rule provides in pertinent part:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed.R.Evid. 403.

and justly convicted. The judgment below must therefore be

*Affirmed.*