USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 92-1613 UNITED STATES OF AMERICA, Appellee, v. RALPH H. CARTY, Defendant-Appellant. ____________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ ____________________ Before Torruella and Cyr, Circuit Judges, ______________ and Keeton,* District Judge. ______________ ____________________ John F. Cicilline for appellant. _________________ Zechariah Chafee, Assistant United States Attorney, with whom _________________ Lincoln C. Almond, United States Attorney, was on brief for appellee. _________________ ____________________ May 28, 1993 ____________________ __________________ *Of the District of Massachusetts, sitting by designation. CYR, Circuit Judge. On July 30, 1990, the Providence CYR, Circuit Judge. ______________ Police executed a state-court search warrant at the residence of appellant Ralph Carty and seized several firearms and a small quantity of cocaine. Carty was tried and convicted on two firearms charges but acquitted on a cocaine charge. Carty contends on appeal that (1) the evidence seized at the residence should have been suppressed because the warrant affidavit con- tained false statements; (2) at the suppression hearing the district court improperly restricted cross-examination of the affiant; and (3) the court improperly admitted "other act" evidence at trial. We affirm. I I DISCUSSION DISCUSSION __________ A. Suppression Hearing A. Suppression Hearing ___________________ 1. Franks v. Delaware 1. Franks v. Delaware ______ ________ The warrant affidavit, provided by Detective Nicholas Cardarelli of the Providence Police Department, formed the primary focus of the Franks hearing1 conducted before the dis- ______ trict court.2 Although the Cardarelli affidavit, dated ____________________ 1At the Franks hearing, see Franks v. Delaware, 438 U.S. 154 ______ ___ ______ ________ (1978), the court also received evidence concerning Carty's post- arrest statements to the police. 2The Cardarelli affidavit stated in pertinent part: Within the past few days . . . my reli- able and confidential informant . . . stated . . . that Ralph and Pamela [Carty] are stor- ing and selling illegal [c]ocaine from [their] house located at 34 Adelaide Ave. 1st floor apartment, garage area and basement area, Providence, RI. . . . July 30, 1990, indicated that the controlled buy had taken place within the preceding "few days," Cardarelli subsequently learned that Carty and his family were on vacation during that time and had not returned to their residence until the evening of July 29. At the suppression hearing, Cardarelli testified that the con- ____________________ Within the past few days this confiden- tial informant . . . agreed to make a pur- chase of cocaine from Ralph H. Carty from 34 Adelaide Ave. first floor apartment. . . . [A]ffiant met this informant at [a] pre-ar- ranged location [where] the informant was searched by your affiant and after finding no contraband the informant was given a sum of U.S. currency for the purpose of purchasing suspected cocaine from the Ralph H. Carty subject at 34 Adelaide Ave. [T]he informant was driven into the area of 34 Adelaide Ave- nue and . . . was then observed by your affi- ant walking over to 34 Adelaide Avenue. . . . [T]he informant was observed knocking on the front door . . . and then . . . entered this location. A short time later the informant was . . . observed . . . walking back to our pre-arranged location. Never losing sight of this informant[,] the informant met your af- fiant back at the pre-arranged loca- tion. . . . [A]t this time the informant handed over to your affiant a bag of suspect- ed cocaine. . . . [A] field test . . . proved positive. . . . . . . [T]he informant who has purchased cocaine several times from either Ralph or Pamela Carty stated to your affiant that cocaine was being stored in the garage area and in the basement area. This informant purchased cocaine from Ralph on one occasion when the informant observed Ralph go into the basement area and came up with a bag of cocaine. On another occasion the informant observed Ralph go into the garage area and return with a bag of cocaine. . . . [T]he informant stated that Ralph hides the cocaine in different areas of his house and garage areas so that the police will not be able to find the large quantity of cocaine if they . . . raid the house. 3 trolled buy took place between 2:00 and 4:00 p.m. on July 30. He __ explained that it was normal police procedure not to reveal the exact date of the controlled buy so as to protect the identity of the confidential informant. Cardarelli testified that he drove the informant to the tenement in which Carty occupied a first- floor apartment, observed the informant enter and emerge shortly thereafter with a small baggie containing a substance that appeared to be cocaine, returned to the Special Investigation Bureau ("SIB") office, and performed a field test on the sub- stance. As the test indicated the presence of cocaine, Card- arelli drafted the affidavit and obtained a search warrant from a state court judge. At approximately 8:00 p.m. on July 30, Cardarelli and other officers executed the search warrant at the Carty residence. Detective Stephen Berarducci corroborated Cardarelli's testimony. He testified that he saw Cardarelli at the SIB office on July 30 at about 2:00 p.m. and was aware that Cardarelli was going to attempt a controlled buy at the Carty residence. According to Berarducci, Cardarelli returned to the office around 4:00 p.m. and performed a field test on a small plastic bag of cocaine, which Cardarelli said had been purchased at the Carty residence. Berarducci also testified that he received a check the following day from Sergeant Dennis Lambert, the SIB evidence control officer, which was used to pay for the informant's services. A photocopy of the check was admitted into evidence. Sergeant Lambert testified that he could locate neither 4 a log book entry, nor a "controlled buy form," reflecting a drug transaction on July 30 conducted by Detective Cardarelli or any other officer.3 Lambert testified that his records documented a controlled buy of heroin on July 25 or 26 at the apartment ______ building in which Carty lived, but that it occurred on the second ______ floor of the building and was unrelated to any controlled buy at _____ the Carty apartment on the first floor. Two of Carty's co-workers testified that he was at work on July 30 between 9:00 a.m. and 7:00 p.m. Mrs. Carty provided similar testimony and submitted receipts reflecting Carty's wages for the day. She further testified that no one came to their residence between 2:00 p.m. and 4:00 p.m. on July 30. Two other individuals testified that they were at the Carty residence throughout the day on July 30 and that no one came to the house between 2:00 p.m. and 4:00 p.m. At the conclusion of the suppression hearing, the district court declined to suppress the evidence seized pursuant ____________________ 3Sergeant Lambert described the procedure used after an investigating officer has directed an informant to purchase drugs with police funds: The investigating officer performs a field test on the drugs, then fills out a controlled buy form reflect- ing the date and location of the controlled buy, the number of the check used to finance the purchase, a description of the items purchased, and the name of the investigating officer. The officer attaches the controlled buy form to the drugs, and drops the narcotics (controlled buy form attached) through a slot into a safe. The officer logs on the control sheet the amount of money spent on the drugs. Lambert transcribes the information from the control sheets into a log book each week. Every month or so, he opens the safe containing the narcotics, compares the controlled buy form attached to each bag of narcotics with the log book, removes and retains the form, and delivers the drugs to the state health department for destruction. 5 to the warrant as Carty had failed to produce sufficient evidence to undermine the Cardarelli affidavit.4 Carty contends that he ____________________ 4The district court explained its findings as follows: Now, turning to the contention that the allegations in the warrant are willful false- hood[s], I must say this is a bold assertion but nevertheless tinged with a degree of suspicion as to the accuracy of Detective Cardarelli's testimony. However, the suspi- cion is not evidence and certainly not strong enough to destroy credibility sufficiently to declare the search illegal. . . . It is strange indeed [that] no [record of the controlled buy] could be lo- cated. This would have clearly established the date of the purchase. . . . The detective asserts the buy was defi- nitely made on the 30th. The affidavit indi- cates it was made within the past few days . . . of the 30th. I agree the semantics of the affidavit lead to an interpretation that the buy was made prior to the 30th. However, the officer explained that preciseness of dates was purposefully avoided when controlled buys are made in order to safeguard the identity of the informant and I am constrained to accept this. . . . [W]hether or not Ralph Carty made the alleged sale to the informant on September 30 [sic] really isn't a vital fact to be resolved in order to rule on this motion. The affidavit premising the issuance of the search warrant did not turn on a pur- chase being made strictly from Ralph Carty nor does it say it was purchased from him. The crucial fact in the affidavit [is] that a purchase was made from Adelaide Avenue on September 30 [sic]. I can understand [defense counsel's] argument here but it would be asking too much of the Court to conclude that Detective Cardarelli is a bold-face perjurer, not only in this courtroom but was at the time that he made the affidavit and at the time that he presented it to the State District Court Judge for the issuance of the warrant. And so I feel constrained and I do hereby deny the [suppression] motions. . . . 6 demonstrated that the controlled buy could not have occurred as described in the Cardarelli affidavit. Without the false state- ments, he argues, the affidavit was insufficient to establish probable cause. See Franks, 438 U.S. at 156 (If the defendant ___ ______ proves perjury or "reckless disregard," by a preponderance of the evidence, and the untainted content of the affidavit is insuffi- cient to establish probable cause, the fruits of the search must be excluded "to the same extent as if probable cause was lacking on the face of the affidavit."). We review the district court's findings of fact for clear error; its conclusion of law de novo. United States v. __ ____ _____________ Garcia, 983 F.2d 1160, 1167 (1st Cir. 1993) (citing United States ______ _____________ v. Sanchez, 943 F.2d 110, 112 (1st Cir. 1991)). Its denial of _______ the suppression motion will be upheld if supported by any reason- able view of the evidence. Id. __ Although we find it troubling, as did the district court, that there is no record of a controlled cocaine buy during the entire relevant period, our review of the suppression hearing transcript reveals nothing inherently contradictory or incredible in Cardarelli's testimony, as corroborated by Detective Berarducci. First and foremost, Cardarelli's suppression hearing testimony as to the exact date of the controlled buy (July 30) is not inconsistent with the time period ("within the past few days") he gave in the warrant affidavit; July 30 at 2:00 to 4:00 p.m. was "within the past few days" of Cardarelli's preparation ___ of the warrant affidavit, which occurred late in the afternoon or 7 early in the evening of July 30. Thus, the affidavit was not necessarily inconsistent with Cardarelli's testimony. Second, the district court, before whom Cardarelli and Berarducci testi- fied, credited Cardarelli's explanation that it was customary to avoid precise specification of the dates of controlled buys in order to protect the identity of informants. Finding nothing inherently inconsistent in Cardarelli's testimony, and mindful of the trial court's superior vantage point, we are satisfied that there is no sound basis for second-guessing its demeanor-based credibility determinations at the suppression hearing.5 See ___ Wainwright v. Witt, 469 U.S. 412, 428 (1985) (determinations of __________ ____ demeanor and credibility are peculiarly within a trial judge's province); United States v. Portalla, 985 F.2d 621, 622 (1st Cir. _____________ ________ 1993) (recognizing district court's broad power to determine witness credibility); see also Anderson v. Bessemer City, 470 ___ ____ ________ ______________ U.S. 564, 575 (1985) ("only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said").6 ____________________ 5Contrary to Carty's contention, we find no indication that the district court imposed a more stringent standard of proof than the applicable "preponderance of the evidence" standard. See Franks, 438 U.S. at 156. ___ ______ 6Appellant claims that the Cardarelli affidavit includes statements made with reckless disregard for their truth, as it gave the erroneous impression that Carty personally sold cocaine to the informant. We need not address the merits of this claim. As the district court correctly noted, Carty's presence at the time the undercover buy occurred was immaterial to the establish- ment of probable cause to search the residence. Since the affidavit provided probable cause to believe that the informant purchased cocaine at the Carty residence, without regard to the __ ___ _____ _________ identity of the seller, the district court properly denied the 8 2. Right to Confrontation 2. Right to Confrontation ______________________ Carty next asserts that his Sixth Amendment right to confront adverse witnesses was infringed by the district court's restrictions on cross-examination of Detective Cardarelli at the suppression hearing. In the course of cross-examining Cardarelli about the perceived discrepancy between his testimony and his affidavit relating to the date of the controlled buy, defense counsel inquired: "Tell me, Detective Cardarelli, why are you represented by Mr. Bevilacqua?" When the court refused, on relevancy grounds, to direct Cardarelli to answer over the government's objection, defense counsel responded by way of an offer of proof: "[I]t is my belief that this witness is being investigated for corruption in the police department." Defense counsel hypothesized that Cardarelli may have adjusted the asserted date of the controlled buy to negate Carty's alibi evidence. Counsel argued that the proposed line of questioning was intended to determine whether Cardarelli was telling the truth. Rebuffed by the district court,7 defense counsel urged ____________________ motion to suppress. See Franks, 438 U.S. at 156; see also United ___ ______ ___ ____ ______ States v. Veillette, 778 F.2d 899, 904 (1st Cir. 1985), cert. ______ _________ _____ denied, 476 U.S. 1115 (1986) (search warrant valid where support- ______ ing affidavit established probable cause independently of false statement). 7The district court responded: I am trying to give you as much leeway as you want to attack the man's credibility. I think you are entitled to it. You have cross-examined him vigorously as to the date of the purchase. He has maintained that a buy was made on the 30th. There is no question how the affidavit reads. It's for me to decide whether that's inconsistent with the affidavit. Now, the fact that he 9 that he be permitted to show Cardarelli's bias, suggesting that "if, in fact, the investigation is being conducted . . . by the [f]ederal [g]overnment, then [Cardarelli] has an interest in making the [f]ederal [g]overnment happy by being a witness who testifies consistently with the [g]overnment's theory of this case[, a]nd bias to that extent is a legitimate area of inquiry." Concluding that it was not "material to the issue here," the court remained steadfast in its refusal to permit inquiry con- cerning the supposed investigation. Carty contends that the proffer demonstrated that the putative federal investigation into possible corruption involving Cardarelli was directly related to the events in the case and probative of Cardarelli's credibility and bias, and, therefore, that the district court's ruling deprived him of his Sixth Amendment right to confrontation. "[A] primary interest secured by [the Confrontation Clause of the Sixth Amendment] is the right of cross-examination." Douglas v. Alabama, 380 U.S. 415, 418 _______ _______ (1965). Cross-examination is the "principal means by which the believability of a witness and the truth of his testimony are tested." Davis v. Alaska, 415 U.S. 308, 316 (1974). Neverthe- _____ ______ less, the right of cross-examination is not without limits. "On ____________________ may be involved in some corrupt practices does not bear on this case at all nor can it bear on this case nor do I know of any rule of evidence which would allow that kind of impeachment of a witness . . . where it is so far removed from the issue at hand. You just want to show he is a corrupt man but you can't do that by trying the allegations that have been made against him. We don't have a conviction here. 10 the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . . cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Delaware v. Van Arsdall, 475 U.S. 673, 679 ________ ___________ (1986). See Brown v. Powell, 975 F.2d 1, 3-4 (1st Cir. 1992); ___ _____ ______ United States v. Malik, 928 F.2d 17, 19-20 (1st Cir. 1991); ______________ _____ United States v. Rivera-Santiago, 872 F.2d 1073, 1084 (1st Cir.), _____________ _______________ cert. denied, 492 U.S. 910 (1989) and cert. denied, 493 U.S. 832 _____ ______ _____ ______ (1989). We review district court limitations on cross-examina- tion for "abuse of discretion." United States v. Boylan, 898 _____________ ______ F.2d 230, 254 (1st Cir.), cert. denied 498 U.S. 849 (1990); _____ ______ Rivera-Santiago, 872 F.2d at 1084. _______________ A criminal defendant's right to cross-examine for bias is an important component of the constitutional right to confron- tation. Thus, the trial court may not limit cross-examination in this area without according the defendant the latitude to conduct a "minimum threshold of inquiry" sufficient to permit the fact- finder to make the requisite discriminating appraisal of the biases of the witness. Brown, 975 F.2d at 5 (quoting United _____ ______ States v. Jarabek, 726 F.2d 889, 902 (1st Cir. 1984)); United ______ _______ ______ States v. Kepreos, 759 F.2d 961, 965 (1st Cir.), cert. denied, ______ _______ _____ ______ 474 U.S. 901 (1985); United States v. Tracey, 675 F.2d 433, 437 _____________ ______ (1st Cir. 1982). Otherwise, the defendant's right to confronta- tion will have been infringed unless the factfinder nonetheless 11 possessed "sufficient other information . . . to make a dis- criminating appraisal of the possible biases and motivations of the witness[].'" Brown, 975 F.2d at 5 (quoting Tracey, 675 F.2d _____ ______ at 437). On the record in this case, we conclude that the district court acted well within its discretion in declining to permit cross-examination to proceed after considering the offer of proof. The court recognized that the conclusory offer of proof simply speculated that an investigation into possible police corruption might be underway and might involve Cardarelli. There was no indication as to the source or basis of the stated belief, no substantiation, and no representation that the federal government was involved in any such investigation. Nor was there any suggestion that the supposed investigation in any manner related to the events at issue in this case. Thus, the conten- tion, advanced below and on appeal, that Cardarelli may have testified with a view to impressing the federal government is not even based on a speculative belief. Absent any such logical linkage, the proposed inquiry was irrelevant, just as the dis- trict court found. Moreover, as the district court was also the finder of fact at the suppression hearing, the defense was on notice that it needed to make the strongest offer of proof possible to overcome the government's objection to this line of inquiry. Yet the offer of proof was left (and remains) patently deficient to enable the conclusion that the district court abused its discretion by ruling the proffer inadequate to warrant 12 further inquiry over the government's objection. Cf. United ___ ______ States v. Sutherland, 929 F.2d 765, 776-77 (1st Cir.) (limitation ______ __________ on cross-examination of witness did not contravene Sixth Amend- ment right to confrontation where defendant "demonstrated abso- lutely no basis for suspecting bias other than a conclusory allegation" that the witness hoped to receive favorable treatment from the government in exchange for his testimony), cert. denied, _____ ______ ___ U.S. ___, 112 S. Ct. 83 (1991); Fed. R. Evid. 103(a)(2). We find no Sixth Amendment violation. B. Trial B. Trial _____ 1. "Other Act" Evidence 1. "Other Act" Evidence ___________________ Finally, Carty contends that the trial court committed reversible error by admitting "other act" evidence which should have been excluded under Federal Rule of Evidence 404(b) or 403. The challenged evidence consisted of post-arrest admissions by appellant Carty relating to a drug source. At trial, Detective Cardarelli testified as follows: Mr. Carty stated to me that he also had a location on Route 95 in Attleboro where he would drive his white Camaro to meet a so- called person, he didn't mention any name or didn't give any description, at a road side rest stop where this person would meet him and leave drugs underneath a trash container at that roadside stop and he would retrieve the drugs and bring them back to the City of Providence. And I then asked him why did you go through all that trouble? And he says, because this person does not want to come into the City of Providence because there's a lot of heat on drug activity in the City of Providence. 13 Another police officer testified that he overheard the conversa- tion, and corroborated Cardarelli's testimony. When asked whether Carty described what he was buying, the officer replied, "coke." Admissible "other act" evidence must survive scrutiny under Rules 403 and 404(b). First, under the "absolute bar" of Rule 404(b), the evidence is inadmissible if relevant solely to show the defendant's character or propensity for criminal con- duct; it must have some "special relevance" to a material issue such as motive, opportunity, intent, preparation, plan, or knowledge. See United States v. Agudelo, ___ F.2d ___, ___ (1st ___ _____________ _______ Cir. 1993), No. 90-1465, slip op. at 4-5 (1st Cir. Mar. 18, 1993); United States v. Williams, 985 F.2d 634, 637 (1st Cir. _____________ ________ 1993); United States v. Donovan, 984 F.2d 507, 512 (1st Cir. _____________ _______ 1993). Second, under Rule 403, the trial court must satisfy itself that the probative value of the evidence is not substan- tially outweighed by the danger of unfair prejudice, confusion, or undue delay. See Agudelo, ___ F.2d at ___, slip op. at 4-5; ___ _______ Donovan, 984 F.2d at 512; United States v. Devin, 918 F.2d 280, _______ _____________ _____ 286 (1st Cir. 1990). The admissibility of "other act" evidence is committed to the sound discretion of the district court, and we review its ruling only for abuse of discretion, United States _____________ v. Garcia, 983 F.2d 1160, 1172 (1st Cir. 1993), bearing in mind ______ that Rule 404(b) is a rule of inclusion, not exclusion, see ___ Donovan, 984 F.2d at 512; United States v. Fields, 871 F.2d 188, _______ _____________ ______ 196 (1st Cir.), cert. denied, 493 U.S. 955 (1989). _____ ______ 14 a. Fed R. Evid. 404(b) a. Fed R. Evid. 404(b) ___________________ Notwithstanding defense counsel's plaint that the testimony indicated that Carty was buying rather than distribut- ing drugs, the district court admitted the challenged evidence on the ground that it "goes to the possible intent and shows that [Carty] was one who did distribute or planned to distribute." Carty contends that the district court improperly ascribed "special relevance" to the evidence. The court correctly ruled that the evidence was proba- tive of intent to commit the charged offense of possession with intent to distribute, noting that "you have to buy [cocaine] to sell it." See, e.g., Garcia, 983 F.2d at 1173 (prior arrest for ___ ____ ______ dealing in cocaine admissible to show intent to possess and distribute cocaine) (quoting United States v. Hadfield, 918 F.2d ______________ ________ 987, 994 (1st Cir. 1990) (citing cases)). The evidence was probative of opportunity as well. Thus, since the "other act" evidence permitted at least one relevant non-propensity and non- character based inference, see United States v. Nickens, 955 F.2d ___ _____________ _______ 112, 124 (1st Cir.), cert. denied, ___ U.S. ___, 113 S. Ct. 108 _____ ______ (1992), it satisfied the requirements of Rule 404(b). b. Fed. R. Evid. 403 b. Fed. R. Evid. 403 _________________ Appellant contends that the probative value of the evidence was greatly outweighed by its prejudicial effect, as the government did not link the "other act" evidence to the cocaine seized from Carty's garage, nor did it establish the quantity previously purchased or show that it was part of a continuing 15 scheme or conspiracy. Only in exceptional circumstances will we reverse a trial court's evidentiary ruling in the face of a Rule 403 challenge. Garcia, 983 F.2d at 1173; United States v. Garcia- ______ ______________ _______ Rosa, 876 F.2d 209, 221 (1st Cir. 1989), cert. denied, 493 U.S. ____ _____ ______ 1030 (1990). Appellant has not shown that the probative value of the "other act" evidence was substantially outweighed by its unfair prejudice. See Onujiogu v. United States, 817 F.2d 3, 6 ______ ___ ________ _____________ (1st Cir. 1987) ("The fact that a piece of evidence hurts a party's chances does not mean it should automatically be exclud- ed, [or] there would be precious little left in the way of probative evidence in any case"). As Carty's post-arrest state- ments relating to a cocaine source were probative of his intent and opportunity to possess and distribute cocaine, see supra Part ___ _____ I.B.1.a., and there was no "unfair prejudice,"8 Rule 403 posed no barrier to their admission in evidence.9 Affirmed. Affirmed. ________ ____________________ 8Although Carty suggests that the "slightest prejudice" resulting from improper admission of the "other act" evidence might have caused the jury to disbelieve a defense witness who testified that he, rather than Carty, owned the weapons seized from the Carty residence, we are hard-pressed to discern any ___ harm. Since the jury acquitted Carty on the cocaine charge to which the "other act" evidence related, we consider the sugges- tion far-fetched. 9Finally, Carty argues that the court erred by not giving limiting instructions to the jury either contemporaneously or in its charge. Carty waived the objection by requesting neither. See Fed. R. Crim. P. 30 & 52(b). Moreover, as we are confident ___ that the lack of limiting instructions did not "seriously affect the fundamental fairness and basic integrity of the proceedings," there was no plain error. See United States v. Barnett, ___ F.2d ___ _____________ _______ ___, ___ (1st Cir. 1993), No. 91-1890, slip op at 25-26 n.14. 16 Dissent follows. Dissent follows. _______ _______ ____________ TORRUELLA, Circuit Judge (Dissenting). I dissent TORRUELLA, Circuit Judge (Dissenting). ______________ because the so-called "other act" evidence relating to a drug source unconnected to the facts of the present case and admitted under Federal Rules of Evidence 404(b), is nothing more than improper propensity or character evidence. I disagree with my colleagues in the majority that it is "far-fetched" that this evidence influenced the jury in any way because Carty was acquit- ted of the cocaine charge. Ante, at 16 n.9. The objected ____ evidence branded him as a drug dealer, not necessarily as the possessor of the small amount of cocaine found. As such a nefarious person, the jury could very well have believed that the firearms were his tools of the trade. The improper character evidence easily could have carried the day for the Government, considering the highly contradictory nature of the proof it presented. Ante, at 3-5. In view of the constitutional burden ____ required of the Government in a criminal case, I fail to see why all the speculation regarding what the jury did or did not do with this improper evidence, should be weighted against defen- dant. Appellant should be granted a new trial. 17