UNITED STATES, Appellee,

v.

Bartley WALSH a/k/a Barney Walsh,
Defendant, Appellant.

No. 90–1583.

United States Court of Appeals,
First Circuit.

Heard Jan. 10, 1991.

Decided March 13, 1991.

George C. McMahon with whom Mary T. Cummings and McMahon Law Offices were on brief, for defendant, appellant.

Gary S. Katzmann, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., was on brief, for appellee.

Before TORRUELLA and SELYA, Circuit Judges, and POLLAK,* Senior District Judge.

LOUIS H. POLLAK, Senior District Judge.

Appellant Bartley "Barney" Walsh appeals his multicount conviction on charges related to his use of labor union and employee-benefit plan funds. We affirm.

## I.

On September 15, 1989, a federal grand jury returned a twenty-three count indictment against Walsh and a co-defendant not a party to this appeal. The case was severed, resulting in a joint trial on five counts,[1] and a second trial with Walsh as the sole defendant on the remaining eighteen counts.

At the first trial, Walsh was convicted on one count of violating 29 U.S.C. § 186(b)(1) and (d)(2), which prohibits a union official from accepting a thing of value from an employer who employs members of the union. At the second trial, Walsh was convicted on six of the remaining eighteen counts: one racketeering count,[2] in violation of 18 U.S.C. § 1962; two labor union embezzlement counts,[3] in violation of 29 U.S.C. § 501(c); one count of causing the filing of a false labor union statement,[4] in violation of 29 U.S.C. § 439(b); one count of making a false statement with regard to an employee-benefit plan report,[5] in violation of 18 U.S.C. § 1027; and one employee benefit plan embezzlement count,[6] in violation of 18 U.S.C. § 664.

The government's evidence at the first trial—in which Walsh was charged with accepting something of value from an employer of union members—showed that, during Walsh's tenure as business agent for Carpenters' Local 67, a member of the union performed work at Walsh's home. The union member performed the work, leaving his regular job site for several hours, while in the employ of Cleveland Cement Contractors, Inc. Walsh never compensated the employee or Cleveland Cement for the work; rather, Cleveland Cement compensated the employee for time spent at Walsh's residence.

Four of the convictions at the second trial[7] related to a scheme whereby Walsh allegedly arranged to receive duplicative reimbursements for travel and other expenses incurred while attending various union functions. The government's evidence showed that, during the period covered by the indictment, Walsh concurrently held numerous labor posts, including positions as (1) business agent for Carpenters' Local 67; (2) president of the Carpenters' District Council; (3) vice-president of the Massachusetts State Council of Carpenters; (4) president of the Building and Construction Trades Council of Greater Boston; (5) vice-president of the Massachusetts AFL–CIO Council; (6) trustee-chairman of the Boston Carpenters' Promotional and Educational Fund; and (7) trustee of the Boston and

---

* Of the Eastern District of Pennsylvania, sitting by designation.

1. Counts 18–22 of the original indictment.

2. Count 1 of the original and renumbered indictment.

3. Counts 2 and 3 of the original and renumbered indictment.

4. Count 4 of the original and renumbered indictment.

5. Count 16 of the original indictment; count 15 of the renumbered indictment.

6. Count 17 of the original indictment; count 16 of the renumbered indictment.

7. Counts 1, 2, 15 and 16 of the renumbered indictment.

Eastern Massachusetts Carpenters' Health and Welfare Fund. The government's evidence also showed that Walsh requested and received compensation for two union business trips—one to Washington D.C. and another to Las Vegas—from one or more of these organizations, without informing them that he was also receiving compensation from one or more other organizations. The government's evidence also showed that the total amounts received from the various organizations were in excess of Walsh's documented expenses for either of these trips. Finally, to support the remaining labor union embezzlement and false filing counts,[8] the government introduced evidence that Walsh received duplicative advances for a trip to Ireland to be taken as part of a delegation led by United States Senator Paul Tsongas. The trip never occurred and appellant never returned either advance.

Walsh's defense largely took the form of claiming that all money received was spent on union business and that—although he could not produce receipts or other documentary evidence to substantiate his claims—the payments received from any one organization were insufficient to cover the sum of his expenses for any particular trip.

Walsh now raises three claims of error. First, he contends that the trial court abused its discretion in admitting at the second trial evidence of other allegedly bad acts committed by Walsh.

Second, with respect to the labor union embezzlement charge brought as a result of his failure to return the Ireland advances, Walsh claims (1) that the district court erred in failing to dismiss the charge on statute of limitations grounds, (2) that the district court did not properly instruct the jury, and (3) that his conviction was incompatible with a conviction, also related to the Ireland advances, for filing a false labor union statement.

Finally, Walsh argues that the evidence admitted at trial with respect to each count—including the conviction at the first trial for receipt of a thing of value—was insufficient to convince a rational trier of fact that all of the elements of a crime had been committed. He therefore contends that the convictions should be overturned on the authority of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

## II.

### A. *Other Acts Evidence*

As part of his defense at the second trial, Walsh chose to take the stand and to testify about the incidents for which he was charged, including testimony on direct examination that sought to explain his receipt of funds from multiple sources. In the course of that testimony, appellant stated that "any and all moneys I ever got from the Labor movement I put back in plus a lot more money." Appendix, 109a. This statement fit with Walsh's general testimony that his labor union trips required substantial business entertaining, such that despite multiple reimbursements, he usually spent more on union business than he actually received from the labor organizations.

On cross-examination, over defense counsel's repeated objection, the government was permitted to inquire into a number of incidents not charged in the indictment, but which tended to shed a bad light on appellant's behavior while in office.[9] The incidents included, inter alia, (1) multiple instances in which Walsh submitted meal and gas receipts from establishments in the New England area, despite the fact that the receipts were dated such that they coincided with the dates of Walsh labor union trips outside New England; (2) multiple instances in which Walsh submitted expense claims supported by sequentially numbered receipts from the same establishment, but in which the expenses often were

---

8. Counts 3 and 4, respectively.

9. Walsh's brief describes the government as having inquired into more than thirty such incidents. The government brief specifically identifies eighteen incidents into which it made inquiry on cross-examination. We do not believe anything turns on how one quantifies the government's cross-examination.

incurred weeks apart, or were incurred in inverse chronological order to the receipts' numbering; and (3) Local 67's sale of a $9,000 automobile to Walsh for $100.

Federal Rule of Evidence 404(b) provides [10]

> **(b) Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Thus, under Rule 404, "other act" evidence is admissible if probative on an issue other than "character." However, such evidence must also conform to Rule 403, which provides that relevant evidence should be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice...." Walsh contends that the "other acts" inquired into were not probative, and thus not admissible under Rule 404(b). Walsh further contends that, even if those "other acts" are deemed to have some probative quality, inquiry into them was unfairly prejudicial and therefore should have been excluded under Rule 403.

■ To assess these contentions, we must consider the context in which the "other acts" were inquired into. On cross-examination of Walsh, the government sought to attack Walsh's direct testimony, including the claim that "all moneys I ever got from the Labor movement I put back in plus a lot more money." The government sought to do this by inquiring into the various incidents described above. The acts inquired into—the automobile purchase and submission of receipts in somewhat unusual patterns—were sufficiently out of the ordinary, at least on their face, that they raised an inference of improper activity. As such, they tended to rebut

appellant's claim that he never received labor movement funds for purposes other than labor movement activity. Therefore, they were within Rule 404(b)'s prescription permitting the introduction of "other acts," provided that such acts are probative and not admitted to prove a person's character.

Admittedly, the acts inquired into were susceptible of a benign explanation. Indeed, on redirect examination, Walsh sought to provide an exculpatory account of the receipt patterns. The fact that a benign account of the evidence was plausible, however, does not mean that the evidence could not be introduced. The government's burden was only to provide *probative* evidence. The "other act" evidence in this case *was* probative, as it tended to undercut Walsh's protestations to the effect that he had never misused union funds. Also, the other acts tended to suggest that Walsh repeatedly improperly charged the union for his expenses. Such a practice in turn tended to support the government's claim that Walsh consciously engaged in a scheme to defraud the various organizations, making the other acts admissible as "proof of ... absence of mistake or accident." In such a situation it was appropriate to put the evidence before the jury, letting the jury determine what weight, if any, it wished to accord the evidence. See *U.S. v. Mateos–Sanchez,* 864 F.2d 232, 235 (1st Cir.1988) (citing *United States v. Rubio–Estrada,* 857 F.2d 845, 846 (1st Cir.1988) and J. Weinstein & M. Berger, 2 *Weinstein's Evidence* § 404[08]; 1 *Weinstein's Evidence* § 403[01]–[04]). The cross-examination on appellant's "other acts," therefore, was appropriate under Rule 404(b).

■ This brings us to Walsh's second claim that the evidence, even if probative, was unfairly prejudicial. The duty to balance the probative and prejudicial aspects of evidence generally falls within the trial

---

**10.** The parties disagree about the ground on which the evidence was admitted. Walsh contends that the evidence was offered and admitted under Federal Rule of Evidence 404(b). The government, without record citation, contends instead that the evidence was offered and admitted under Rule 608. In view of our ruling below on the merits of the evidentiary issue (namely that, contrary to Walsh's contention, the evidence was properly admissible under Rule 404(b)), we find it unnecessary to resolve the disagreement as to which ground the district court had in mind in making its correct ruling.

court's discretion. *Mateos–Sanchez,* 864 F.2d at 235. In this case, where Walsh spent considerable time on direct examination testifying to his good conduct while holding union office, we find no abuse of discretion in permitting the challenged cross-examination.

## B. *The Ireland Trip*

### 1. Statute of Limitations Claim and Failure to Instruct the Jury

Count 3 of the indictment charged that "beginning on or about August 25, 1983, and continuing until at least January 1985 in the district of Massachusetts, the defendant, Barney Walsh while an officer and employee" of Local 67 embezzled $1800, in violation of 29 U.S.C. § 501(c).[11] The evidence produced at trial showed that in August 1983 Walsh received an invitation to travel to Ireland as part of a fact-finding delegation to be led by United States Senator Paul Tsongas. In anticipation of the trip, Walsh approached both Local 67 and the Massachusetts State Council for funding. Each organization agreed to provide Walsh $1800 to participate in the delegation.

In January 1984, Senator Tsongas announced that he would not seek reelection due to illness. Both Senator Tsongas and his aide, Frank Daly, testified that they considered the trip cancelled as of that date, although neither recalled any formal communication of the cancellation being sent to those previously invited. Walsh testified that he considered the trip cancelled as of January 1984 when he learned of the Senator's admission to a local hospital. In any event, the trip never occurred, Senator Tsongas left the Senate in January 1985, and Walsh admits having failed to repay the funds to Local 67 and to the Massachusetts State Council. Walsh also testified to being sorry that he had not repaid the funds, although on cross-examination he could not state when it first occurred to him that he should have made repayment.

After the testimony of Walsh, Senator Tsongas and Frank Daly was complete, Walsh moved to have the embezzlement charge dismissed on statute of limitations grounds. Walsh argued that since he, Senator Tsongas, and Frank Daly all testified that they considered the trip cancelled as of January 1984, the embezzlement occurred at that time. Since the indictment was returned in September of 1989, this would be approximately eight months outside the statute of limitations' five-year term. The district court denied the motion, holding that, in light of the testimony that Senator Tsongas's office never officially informed Walsh of the trip's cancellation, a jury could reasonably conclude that the embezzlement was accomplished after September 1984, the relevant date for statute of limitations purposes.

On appeal, Walsh renews his claim that the labor union embezzlement count should have been dismissed on statute of limitations grounds. He also contends that the district court erred in failing to instruct the jury as to the significance of the January 1985 date contained in the indictment.

A criminal statute of limitations begins to run when the crime is complete. *Toussie v. United States,* 397 U.S. 112, 115, 90 S.Ct. 858, 860, 25 L.Ed.2d 156 (1970). A crime is not complete until every element of the crime has been accomplished. *United States v. Sams,* 865 F.2d 713, 715 (6th Cir.1988), *cert. denied,* 491 U.S. 905, 109 S.Ct. 3187, 105 L.Ed.2d 695 (1989). In this case, the indictment was returned on September 15, 1989, and was subject to a five-year statute of limitations. See 18 U.S.C. § 3282. Thus, in order to determine whether the district court erred in refusing to dismiss the labor union embezzlement count, we must consider whether the evidence irrefutably established that all elements of the embezzlement were commit-

---

**11.** 29 U.S.C. § 501(c) provides

Any person who embezzles, steals, or unlawfully and willfully abstracts or converts to his own use, or the use of another, any of the money, funds, securities, property, or other assets of a labor organization of which he is an officer or by which he is employed, directly or indirectly, shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

ted before September 15, 1984, or whether, instead, a jury could reasonably have concluded beyond a reasonable doubt (assuming the issue was presented to the jury) that the embezzlement was not accomplished until after that date.

The essential elements of an embezzlement offense under § 501(c) are

(1) a conversion—or, in other words, an unauthorized appropriation—of property belonging to another, where (2) the property is lawfully in the defendant's possession (though for a limited purpose) at the time of the appropriation, and (3) the defendant acts with knowledge that his appropriation of the property is unauthorized.

*United States v. Stockton*, 788 F.2d 210, 217 (4th Cir.), *cert. denied*, 479 U.S. 840, 107 S.Ct. 147, 93 L.Ed.2d 89 (1986). The dispute in the present case centers on whether the third element of the embezzlement offense was accomplished by September 1984. Walsh contended before the district court, and argues on appeal, that the evidence established that he had the requisite knowledge of wrongful appropriation before September 15, 1984, and that therefore the embezzlement charge was barred.

In the face of the mixed evidence produced at trial we cannot say that the district court erred in refusing to dismiss the labor union embezzlement count. It is undisputed that with Senator Tsongas's retirement from the Senate in January 1985, Walsh knew that his retention of the advance was wrongful. However, given Walsh's testimony that he did not know when it first occurred to him that he should repay the money and the testimony of Senator Tsongas and Frank Daly that they knew of no formal trip cancellation being communicated, a jury could reasonably have concluded that Walsh did not know in September 1984 that his retention of the funds was wrongful. Thus, the district court did not err in refusing to dismiss the embezzlement count as a matter of law on statute of limitations grounds. See *United States v. Sams*, 865 F.2d at 716 ("[t]he determination of when willfulness manifests itself is a factual issue which must be determined

by the jury"); *cf. United States v. Andros*, 484 F.2d 531, 532 (9th Cir.1973) (in a tax case of which willfulness is an essential element, the statute of limitations begins to run when the failure to pay became willful, not when the taxes were assessed).

With respect to Walsh's further claim that the jury should have been instructed regarding the significance of the various dates, including the January 1985 date included in the indictment, we note simply that Walsh has failed to identify any point in the record where such an instruction was requested. Absent such a request, the point was waived.

2. Incompatibility with other counts

■ Walsh also contends that his conviction on the labor union embezzlement charge was incompatible with his simultaneous conviction on Count 4 for knowingly causing to be filed a false labor organization annual report. The report in question, an LM–2, was filed on October 3, 1984 by the State Council. It represented that among the Council's legitimate expenses was the $1800 expenditure for Walsh's trip. Walsh contends on appeal that he could not have *knowingly* caused a false report to be filed on October 3, 1984, and yet have lacked on September 15, 1984 the knowledge necessary to complete the embezzlement.

Walsh is correct in suggesting that no event was identified at trial as having occurred between September 15 and October 3 which would account for a change in the state of Walsh's knowledge of the wrongfulness of retaining the funds. In turn, Walsh's position that conviction on both counts was incompatible would have merit if the falsity of the LM–2 report stemmed only from appellant's retention of the funds while failing to take the Ireland trip. However, this is not the case. Rather, the LM–2's representation that the $1800 expenditure was a legitimate organization expense was also false because Local 67 had already advanced funds sufficient to pay for the trip. Given the funding received from Local 67, Walsh's receipt of funds was not to support legitimate State Council

expenses. Walsh undoubtedly knew that it was wrong to receive duplicative expense reimbursements that exceeded his anticipated expenses. He thus knew that the LM–2 was false at the time it was filed. It would have been false even had the Ireland trip occurred. Thus, there is no inconsistency in Walsh's simultaneous conviction on Counts 3 and 4.

## C. *Insufficiency of the Evidence*

Finally, Walsh contends that none of the convictions was supported by sufficient evidence. We need not review in detail the litany of error Walsh recites. In most cases Walsh's position turns on the government's alleged failure to demonstrate that moneys received in excess of Walsh's demonstrated expenses were not put to legitimate use. In response it is sufficient to note that the government's case showed a repeated pattern of Walsh receiving funds in excess of his demonstrated expenses, and that the excesses were of sufficient magnitude that a jury could reasonably have concluded that the excesses were not needed for legitimate labor organization expenses. Given Walsh's failure to provide documentary, as opposed to self-serving testimonial, evidence that excess funds were expended for legitimate purposes, we cannot conclude that the convictions were based on insufficient evidence.

## III.

For the foregoing reasons, the judgment of the district court is

Affirmed.