

1995 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

1-31-1995

# USA v J Michael Oliva

Precedential or Non-Precedential:

Docket 93-5099

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1995

Recommended Citation

"USA v J Michael Oliva" (1995). *1995 Decisions.* Paper 29.
http://digitalcommons.law.villanova.edu/thirdcircuit_1995/29

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1995 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT


No. 93-5099


UNITED STATES OF AMERICA

V.

J. MICHAEL OLIVA,
                    Appellant


ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. Criminal No. 92-00067-01)


Argued November 22, 1994

Before:  HUTCHINSON and NYGAARD, <u>Circuit Judges</u> and
         LUDWIG, <u>District Judge</u>*

(Opinion Filed   January 31, 1995)

ROBERT J. CANDIDO, ESQUIRE (Argued)
425 Pompton Avenue
Cedar Grove, NJ 07009
Attorney for Appellant

FAITH S. HOCHBERG, ESQUIRE
United States Attorney
TIMOTHY McINNIS, ESQUIRE, (Argued)
Assistant U.S. Attorney
EDNA B. AXELROD, ESQUIRE
Assistant U.S. Attorney
Office of United States Attorney
970 Broad Street, Room 502
Newark, NJ 07102
Attorney for Appellee

OPINION OF THE COURT

* Honorable Edmund V. Ludwig, United States District Judge for the Eastern District of Pennsylvania, sitting by designation.

NYGAARD, Circuit Judge.

Oliva was convicted of embezzling union funds in violation of 29 U.S.C. § 501(c). His appeal presents us with four issues: (1) whether the evidence was sufficient to convict him; (2) whether reimbursement is a defense to embezzlement; (3) whether the statute of limitation bars his indictment and conviction; and (4) whether the district court committed reversible error in its instructions to the jury on the "intent" element of the offense. We will affirm. The first two issues are wholly without merit and require no explanation. The latter two, however, we explain as follows.

I.

Oliva was the manager of the South Jersey Joint Board of the Amalgamated Clothing and Textile Workers' Union, having "inherited" the position from his father. The Joint Board was composed of six members, including Oliva, a business agent, and two clerical employees. While he was Joint Board manager, Oliva regularly submitted substantial travel expenses that he claimed were incurred on behalf of the union. Among these expenses were three airline tickets, issued in the names of his wife and two children, for round-trip travel between Philadelphia and Miami. The tickets were purchased with the Joint Board's American Express card, which had been given to Oliva for union-related expenses. The tickets were paid for on February 1, 1987, when the union's office secretary prepared a Joint Board check as

payment for its January 1987 American Express bill, obtained Oliva's signature on the check, and mailed the check to American Express.  The check cleared on February 5, 1987.

The facts were largely undisputed and the primary issue for the jury was whether these tickets were obtained with fraudulent intent, as the Government contended, or whether Oliva's wife's ticket had been authorized by the Joint Board and the children's tickets had been paid for with Joint Board funds in error, as Oliva claimed.

Oliva introduced Joint Board minutes purportedly authorizing his wife to accompany him on union-related trips.  He also introduced the testimony of a retired Joint Board officer to support his claim.  He acknowledged that the children's tickets were not authorized, but argued that they were purchased with the union credit card solely to get a better rate.  He claimed that there was no difference between reimbursing the union for these tickets after the trip rather than before.  Defense counsel acknowledged in his opening and closing statements, that while Oliva may have spent union money "imprudently," he had always done so with the good faith belief that he was helping the Joint Board's constituents by trying to get work for them from textile manufacturers.

Other Joint Board members testified that the Board had not authorized payment for Oliva's wife to travel with him and that all Board members were required to pay travel expenses for

their spouses.  These Board members also testified that a number of sets of Joint Board minutes, including those concerning authorization for Oliva's salary, Christmas bonus, and travel for Oliva and his wife, contained "downright lies" and did not accurately reflect what happened at Joint Board meetings.  The Board members and the office secretary who typed the minutes also testified that Oliva prepared the minutes and they contained whatever he wanted.

The government introduced evidence concerning Oliva's use of Joint Board funds for personal expenditures.  One such expenditure, totaling $7,000, was incurred when Oliva arrived on the last day of a 1986 AFL-CIO convention in Florida (a convention he was to attend but not participate in) and remained in Florida for approximately two more weeks.  During this time, Oliva spent $800 of the union's money on two tickets for a racing event.  Other expenses for which Oliva was reimbursed included limousine service, airfare, hotels and meals relating to two trips he and his wife took to a gun manufacturer in Yakima, Washington.  This trip was exclusively for the benefit of Oliva's gun dealership, which he operated from the Joint Board's offices while serving as its manager.

The evidence at trial showed that these appropriations had a false union authorization.  The Yakima-related expenses were approved without question by Joint board Secretary Patitucci, who was ostensibly acting on behalf of the Joint

Board's "finance committee."  In addition, Joint Board minutes purportedly authorized the Yakima trips.  These minutes stated that during the trips Oliva met with his peers on ACTWU's Pacific Northwest Joint Board and with a textile manufacturer in that region.  A Pacific Northwest Joint Board officer testified at trial that both claims were entirely false.

The evidence also included numerous charges to the Joint Board's Federal Express account that were really incurred on behalf of Oliva's gun business.  An office secretary testified not only to the personal nature of these expenses, but also that several times she expressed a concern about paying these charges with union funds, but was told by Oliva to pay them anyway.

When the ACTWU auditors spotted Oliva's purchase of airline tickets to Florida for his children, they questioned Oliva as to its legitimacy.  It was only after this inquiry that Oliva reimbursed the Joint Board for the two airline tickets.

## II.

The first issue we address is whether a belief that one's acts were unauthorized and/or were not for the benefit of the union are merely factors bearing on intent or whether they are the essence of intent and must be proven at trial.  Courts of appeals have taken essentially three different approaches.  The first approach is that a conviction under § 501(c) can be obtained under an "unauthorized expenditure" theory if the government proves that the defendant had a fraudulent intent to

deprive the union of its funds and that he lacked a good faith belief that the expenditure was for the legitimate "benefit of the union." United States v. Gibson, 675 F.2d 825, 828-29 (6th Cir.), cert. denied, 459 U.S. 972 (1982).

In the second approach, courts have placed a greater weight on union authorization. The First Circuit Court of Appeals' view is reflected in United States v. Sullivan, 498 F.2d 146, 150 (1st Cir.), cert. denied, 419 U.S. 993 (1974) ("In our view the willing acceptance of misappropriated union funds by a recipient who knows that such funds are unauthorized and illegal will constitute a violation of § 501(c)"). The Fourth Circuit Court of Appeals has taken the same position in United States v. Stockton, 788 F.2d 210, 217 (4th Cir.), cert. denied, 479 U.S. 840 (1986) ("[T]he traditional concept of embezzlement comprises (1) a conversion -- or, in other words, an unauthorized appropriation -- of property belonging to another, where (2) the property is lawfully in the defendant's possession (though for a limited purpose) at the time of the appropriation, and (3) the defendant acts with knowledge that his appropriation of the property is unauthorized, or at least without a good-faith belief that it has been authorized.").

The Fifth Circuit Court of Appeals focuses at times on benefit, while at other times it highlights authorization. Compare United States v. Lavergne, 805 F.2d 517 (5th Cir. 1986) (in cases of misuse of authorized funds the government must rebut

a defendant's good faith defense that his actions benefitted the union); with United States v. Nell, 526 F.2d 1223, 1232 (5th Cir. 1976) (once lack of authorization is shown, the prosecution need not show lack of union benefit).  In one other case the Court of Appeals for the Fifth Circuit appears to have abandoned the foregoing formula entirely.  United States v. Durnin, 632 F.2d 1297, 1300 & n.5 (5th Cir. 1980) (where government thoroughly establishes fraudulent intent it is not necessary to determine whether act was authorized).

Then finally, the Second Circuit Court of Appeals seems to place equal weight on both union authorization and benefit. In United States v. Butler, 954 F.2d 114, 118 (2d Cir. 1992), the court held that "a union official charged with embezzling union funds pursuant to 29 U.S.C. §501(c) lacks the requisite criminal intent when the evidence establishes that he had a good-faith belief both that the funds were expended for the union's benefit and that the expenditures were authorized (or would be ratified) by the union."

There are obvious problems with these two approaches, which do not adequately protect union members and their funds. First, the owners of the fund (union members) are never in a position to authorize the use of the funds.  Moreover, the owner's delegates, the union leaders who authorize the trips, are often the ones who take them.  Hence, there is a potential for abusing the authorization.  With respect to the benefit theory,

those who take the trips may often be in the strongest position to justify them as a benefit to the union in ways that are not easily disproven.  The law, however, is designed to protect the funds of the members.

We believe the better approach, and one which avoids the paradoxes of the "benefits" and "authorization" defenses, is the totality of circumstances test used by the Seventh, Eighth and Ninth Circuit Courts of Appeals.  See United States v. Floyd, 882 F.2d 235, 240 (7th Cir. 1989); United States v. Welch, 728 F.2d 1113, 1119-20 (8th Cir. 1984); United States v. Thordarson, 646 F.2d 1323, 1334, 1336 (9th Cir.), cert. denied, 454 U.S. 1055 (1981).  This requires that the factfinder look at all evidence in light of all circumstances to determine whether the government has proven the requisite intent.  Within this analysis, both authorization and benefit are merely factors that may be considered as bearing on intent.

Applying the totality of circumstances test, we conclude that the district court properly instructed the jury. First, the district court read to the jury both § 501(c) and the definition of a fiduciary, which is contained in § 501(a).  The district court then enumerated the four elements of a § 501(c) offense, including as the fourth element "that the defendant acted knowingly, wilfully, unlawfully, and with fraudulent intent to deprive the South Jersey Joint Board of its money, funds, securities, property or other assets."  The district court

instructed the jury that Oliva's acts must have been "knowing," "wilful," and "unlawful," then defined those terms for the jury. It told the jury that in

> determining the issues of knowledge and fraudulent intent, you may consider any statement made and acts done or not done by the defendant, J. Michael Oliva, as well as all of the facts and circumstances in evidence which surround or attend the defendant's actions or statements, or which may aid you in determining the defendant's state of mind.

The district court also advised the jury members that it was for them to determine whether Oliva's purchase of the airline tickets was authorized and whether Oliva knew if they were authorized. This, the court instructed the jury, should also be considered in deciding whether Oliva had fraudulent intent. Next, the district court advised the jury that, in determining whether or not he possessed the requisite fraudulent intent, "it is for you to consider whether or not he lacked the good faith belief that [the tickets] benefitted the union as a whole . . ." or "the union members . . . as a whole." The court further advised the jury that their determination must be made "from all the surrounding circumstances that he lacked the good faith belief of benefit to the members of the union as a whole."

We conclude that, although the district court did not have the benefit of which among the various options on intent this court would adopt, it instructed the jury properly.

III.

The general five-year statute of limitations applies to noncapital criminal offenses, including violations of 29 U.S.C. § 501(c). Accordingly, to avoid being considered time-barred, an indictment must be "found" within five years after the offense has been "committed." 18 U.S.C. § 3282. An indictment is found when it is returned by a grand jury and filed. United States v. Srulowitz, 819 F.2d 37, 40 (2d Cir.), cert. denied, 484 U.S. 853 (1987). Where, as here, the government has filed a superseding indictment, the day on which the original indictment was filed controls for statute of limitation purposes, provided that, as here, the superseding indictment does not materially broaden or substantially amend the charges in the first. United States v. Friedman, 649 F.2d 199, 203-04 (3d Cir. 1981) (adopting United States v. Grady, 544 F.2d 598, 601-02 (2d Cir. 1976)).

The determination of when the crime has been committed for statute of limitation purposes, however, is ordinarily a question of fact for the jury. See United States v. Walsh, 928 F.2d 7, 11-12 (1st Cir. 1991). The issue on appeal is ordinarily whether a jury could have concluded beyond a reasonable doubt that the offense had been committed within the requisite period. Id.

Nonetheless, here we cannot review the statute of limitations issue because it has been waived. We have held that the statute of limitations is an affirmative defense which is waived if not first raised in the district court. United States

v. Karlin, 785 F.2d 90, 92-93 (3d Cir. 1986), cert. denied, 480 U.S. 907 (1987). In Karlin the defendant was convicted of failing to file income tax returns. Among the issues on appeal was whether one tax year fell outside the applicable six-year statute of limitations. The count at issue in the indictment had been filed after the statute of limitations had run. Karlin, however, had not made this argument in the district court, but raised it for the first time on appeal. We held that "in criminal cases the statute of limitations does not go to the jurisdiction of the court but is an affirmative defense that will be considered waived if not raised in the district court before or at trial." Id. at 92-93.

It is undisputed that Oliva neither raised the statute of limitations as a defense before or at trial nor asked for any jury instructions on the defense. Hence, Oliva's failure amounts to a waiver which prevents us from reaching the issue on direct appeal. See United States v. Gambino, 788 F.2d 938, 950-51 (3d Cir.), cert. denied, 479 U.S. 825 (1986). Claims of ineffective assistance of counsel should ordinarily be raised in a collateral proceeding under 28 U.S.C. § 2255. See United States v. Sandini, 888 F.2d 300, 312 (3d Cir. 1989), cert. denied, 494 U.S. 1089 (1990). Hence, although appellant's counsel invites us to decide the statute of limitations issue, we will not. Moreover, we cannot, for the simple reason that the record is not fully developed on whether the failure to raise the statute of

limitation at the appropriate time would have been successful and, hence, that the failure to do so rendered counsel's assistance ineffective.

## IV.

In sum, we conclude that the district court properly instructed the jury and that Oliva has waived the statute of limitations issue. We will therefore affirm the judgment of conviction.