**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-4409 and 14-4519
_____

UNITED STATES OF AMERICA
v.
JAY STOUT,
                    Appellant in 14-4409

___

UNITED STATES OF AMERICA
v.
FLYING TIGERS, INC.,
                    Appellant in 14-4519
_____

On Appeal from the District Court
for the Eastern District of Pennsylvania
(Crim. Nos. 5-12-cr-00394-001 and 5-12-cr-00394-002)
District Judge:  Honorable Harvey Bartle III
_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
October 5, 2015

Before:  FUENTES, SMITH, and NYGAARD, *Circuit Judges*

(Filed: November 3, 2015)
_____

OPINION*
_____

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

FUENTES, *Circuit Judge*:

Everyone who boards an airplane wants some assurance that the plane is safe. To that end, Congress has passed statutes governing aircraft maintenance and inspection. Some of those laws are administrative, such as those creating the Federal Aviation Administration ("FAA") and empowering it to regulate the nation's skies. Others are criminal, such as those making it illegal to commit fraud involving aircraft parts. In this case, a jury convicted the defendants of participating in a scheme to evade the aircraft inspection laws and then fabricating records to conceal their wrongdoing. We will affirm.

**I.**

Gilbert Stout founded Flying Tigers, Inc., in Marietta, Pennsylvania in 1975. The company operated out of Donegal Springs Airport and specialized in performing maintenance work on small aircraft. After Gilbert Stout retired, his son, Jay Stout, became president of the company. Jay Stout's son, Joel, occasionally worked at Flying Tigers as a repair technician and inspector.

In November 2007, a former Flying Tigers employee named Brian Cavada visited an FAA inspector, James Pool, and claimed that someone at Flying Tigers had forged his signature on inspection documents. Inspector Pool raised the allegations with his superiors, but the FAA declined to open an investigation at that time. Inspector Pool then reached out to the Department of Transportation Inspector General's Office (the "DOT-IG"). Robert Brautigam, a DOT-IG special agent, began looking into the matter. He eventually obtained a search warrant and collected evidence implicating the

2

defendants in fraudulent activity.

The government indicted Joel and Jay Stout, as well as Flying Tigers, in August 2012.[1]  It alleged that the defendants engaged in a pattern of billing customers for inspections that, if they occurred at all, were conducted by persons who lacked licenses to perform them.  Joel Stout ultimately pleaded guilty and agreed to testify against his father. The government then filed a superseding indictment against Jay Stout and Flying Tigers.[2] It charged the defendants with conspiracy, fraud involving aircraft parts, mail fraud, wire fraud, and obstruction of justice.[3]

The jury returned verdicts of guilty, although it acquitted Jay Stout on two mail and wire fraud counts that had been added in the superseding indictment.  Stout received a sentence of five years' imprisonment, three years' supervised release, a $2,000 fine, over $500,000 in restitution, and an $800 special assessment.  Flying Tigers was sentenced to one year of probation and a $5,600 special assessment.

## II.

Defendants first seek to overturn their convictions by arguing that Agent Brautigam lacked any authority to conduct a criminal investigation.  Moreover, because the government did not disclose the fact that the FAA initially declined to pursue

---

[1] The District Court had jurisdiction under 18 U.S.C. § 3231.  We have jurisdiction under 28 U.S.C. § 1291.

[2] The superseding indictment charged a third Flying Tigers employee, Howard Gunter, who died before trial.

[3] The statutory provisions criminalizing these offenses appear at 18 U.S.C. §§ 371, 38(a), 1341, 1344, and 1519, respectively.

allegations of fraud at Flying Tigers, the defendants argue that it violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963). Neither contention has any merit.

We begin with the assertion that Agent Brautigam lacked the authority to investigate Flying Tigers. Defendants rest their argument on several statutory and regulatory provisions which they read as vesting investigative authority solely in the FAA's legal division.[4] At the same time, they contend that the regulations governing the DOT-IG empower that office only to investigate certain offenses relating to air carriers.[5] Defendants' interpretation of these provisions is simply wrong.

In the first place, defendants fail to distinguish between the FAA's administrative powers and the government's concurrent authority to investigate and prosecute criminal conduct. Contrary to defendants' arguments, Congress has empowered the DOT-IG "to conduct, pursuant to Federal criminal statutes, investigations of allegations that a person or entity has engaged in fraudulent or other criminal activity relating to the programs and operations of the Department or its operating administrations." 49 U.S.C. § 354(a). DOT-IG officials are also empowered to execute search warrants and to make arrests.[6] Agent Brautigam was not acting as a "rogue agent" when he began scrutinizing defendants' conduct. Instead, he was exercising investigative authority explicitly entrusted to him by statute.

---

[4] *See* 49 U.S.C. § 46101; 14 C.F.R. §§ 305.5, 305.11.

[5] *See* 14 C.F.R. § 385.20.

[6] *See* 5 U.S.C. App. 3 § 6(e)(1), (3).

Likewise, we are not persuaded that the DOT-IG acted improperly by investigating Flying Tigers after the FAA declined to do so. The relevant statute specifies that agency heads have no authority to prevent inspectors general from pursuing alleged wrongdoing.[7] The FAA's legal division itself referred the Cavada allegations to the DOT-IG for further action.[8] This is to say nothing of the fact that the DOT-IG ultimately partnered with the U.S. Attorney's Office and obtained a search warrant from a federal magistrate judge.[9] Where defendants see flagrant abuses of power, we see a statutorily authorized investigation that evolved through the normal procedural channels.[10]

We also fail to see any violation of the government's *Brady* obligations. To make out such a claim, the defendants must show that "(1) evidence was suppressed; (2) the evidence was favorable to the defense; and (3) the evidence was material to guilt or punishment." *Simmons v. Beard*, 590 F.3d 223, 233 (3d Cir. 2009). Assuming for the

---

[7] *See id.* § 3(a) ("Neither the head of the establishment nor the officer next in rank below such head shall prevent or prohibit the Inspector General from initiating, carrying out, or completing any audit or investigation . . . .").

[8] *See* App. Vol. III at 381, 397, 399.

[9] For this reason we find defendants' citation to our decision in *University of Medicine & Dentistry of New Jersey v. Corrigan*, 347 F.3d 57 (3d Cir. 2003), totally unpersuasive. Defendants cannot show that their prosecution occurred *ultra vires* when it was brought by the proper law enforcement officials at the Justice Department. Moreover, *Corrigan* itself recognized "the broad discretion [that an] inspector general enjoys when determining [whether] audits and investigations are appropriate." *Id.* at 67.

[10] Defendants argue that the remedy for Agent Brautigam's supposed malfeasance is to exclude "the fruit of wanton due-process violations and illegal searches." (Defs.' Br. at 11.) Defendants waived this argument by not raising it before the District Court. *United States v. Burnett*, 773 F.3d 122, 131 (3d Cir. 2014), *cert. denied*, 135 S. Ct. 1722 (2015).

sake of argument that the government did not disclose all of the details surrounding the decision to open an investigation, the defendants fail to explain how the bureaucratic back-and-forth between the DOT-IG and the FAA bears on any of the *Brady* factors.

Defendants fare no better by asserting that their fraud is punishable only through civil penalties. Indeed, their argument implies that Congress has immunized aircraft repairmen from *all* criminal liability relating to their work. This is obviously not the case, especially given that Congress looked beyond the FAA's administrative powers and separately criminalized the offense of fraud relating to aircraft parts. It is true, of course, that Congress sometimes changes the law by reclassifying criminal conduct as a regulatory offense. But insofar as defendants are claiming that Congress did so *here*, we have said that we require proof that "Congress intended to work an implied repeal of existing federal criminal statutes." *United States v. Boffa*, 688 F.2d 919, 932 (3d Cir. 1982). Defendants have offered no such evidence. Thus, defendants are incorrect when they contend that criminal sanctions are not permitted in this case.

### III.

Defendants also challenge the sufficiency of the evidence supporting their convictions. Our review in this context is "highly deferential." *United States v. Caraballo-Rodriguez*, 726 F.3d 418, 430 (3d Cir. 2013) (en banc). We will set aside a jury's verdict on the ground of insufficient evidence only if "no rational trier of fact could have agreed with the jury." *Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011).

In this case, the government presented more than enough evidence for a reasonable

jury to convict the defendants. With respect to the conspiracy charge, Joel Stout's testimony was especially powerful. He admitted that, at his father's instruction, he signed Brian Cavada's name to inspection certifications.[11] He told the jury that he witnessed another Flying Tigers employee signing certifications for aircrafts the employee had not inspected.[12] He also identified numerous instances in which Jay Stout appears to have forged his family members' signatures on aircraft inspection documents.[13]

The evidence as to fraud involving aircraft parts, mail fraud, and obstruction of justice was equally compelling. Two different airplane owners provided information to the jury indicating that inspection documents they received from Flying Tigers were fraudulent.[14] The parties stipulated that the defendants used the U.S. mail to send invoices to their customers, and the government introduced evidence tending to show that some of those invoices were part of defendants' scheme. Finally, one of Flying Tigers' customers testified that a log book he had provided to Jay Stout for inspection appeared to have been tampered with in order to conceal the defendants' wrongdoing.[15]

We conclude that the evidence was sufficient for a reasonable jury to have convicted the defendants.

---

[11] App. Vol. III at 520-22.

[12] *Id.* at 535-37.

[13] *Id.* at 548-49; 551-52.

[14] *See* App. Vol. IV at 720-26, 772.

[15] *See* App. Vol. III at 459-62; App. Vol. V at 863-66.

**IV.**

Defendants next assert that their convictions should be overturned because the five-year statute of limitations had run. When, as here, "the government has filed a superseding indictment, the day on which the original indictment was filed controls for statute of limitation purposes, provided that . . . the superseding indictment does not materially broaden or substantially amend the charges." *United States v. Oliva*, 46 F.3d 320, 324 (3d Cir. 1995). Defendants' argument therefore depends on the correctness of their view that the second indictment meaningfully differed from the first.[16]

We need not reach the merits of this issue in order to conclude that defendants' position is unavailing. First, expiration of the statute of limitations is an affirmative defense that defendants waived by not raising in the District Court. *See United States v. Karlin*, 785 F.2d 90, 92-93 (3d Cir. 1986). Second, Jay Stout was acquitted of the two counts that were added in the superseding indictment. Any error resulting from the inclusion of time-barred counts in the charging instrument was therefore harmless. *See United States v. Atiyeh*, 402 F.3d 354, 373 (3d Cir. 2005).[17]

---

[16] There were two main differences between the indictments. First, the superseding indictment added one count each of mail fraud and wire fraud. Second, the superseding indictment expanded the duration of the alleged conspiracy. *Compare* App. Vol. II at 96 ¶ 13 (alleging a conspiracy that lasted from October 2006 through October 2009), *with id.* at 121 ¶ 13 (alleging a conspiracy lasting from October 2003 through January 2010).

[17] While Defendants argue that the inclusion of time-barred counts in the superseding indictment constitutes plain error, they fail to show, at least with respect to Jay Stout, that the purported error affected the outcome of the proceedings. *United States v. Andrews*, 681 F.3d 509, 517 (3d Cir. 2012). While the government acknowledges that $800 of Flying Tigers' special assessment is attributable to conviction on arguably time-barred counts, any objection on that issue was waived by failing to raise it in the District Court.

## V.

Lastly, the defendants contend that the District Court erred by failing to give aiding and abetting instructions to the jury on certain charges. They make this argument notwithstanding the fact that the Court *did* give an aiding and abetting instruction on the obstruction of justice charge.[18]

We see no error in the District Court's instructions. In the first place, the government presented its case as to the non-obstruction offenses on a theory of principal liability.[19] Moreover, because the defendants did not object to the jury instructions below, we review only for plain error, *United States v. Tai*, 750 F.3d 309, 313 (3d Cir. 2014), and we discern none.

## VI.

The jury convicted the defendants of participating in a fraudulent scheme to evade the inspection regime that Congress and the FAA have enacted to keep aircraft pilots and passengers safe. Those convictions rest on adequate evidence and occurred following a trial in which the defendants received all the legal process they were due.

We therefore will affirm the judgments of the District Court.

---

[18] *See* App. Vol. VII at 1512-13.

[19] *See* 18 U.S.C. § 2(a) ("Whoever commits an offense against the United States or aids [or] abets [the same] . . . is punishable as a principal.").