**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-3216
_____

UNITED STATES OF AMERICA

v.

JACINTA A. GUSSIE,

                          Appellant

_____

On Appeal from the
District Court
of the Virgin Islands
(D.C. No. 1:16-cr-00021-005)
District Judge: Honorable Wilma A. Lewis

_____

Argued
June 3, 2022

Before: JORDAN, MATEY, and ROTH, *Circuit Judges*.

(Filed: October 18, 2022)
_____

Renee D. Dowling **[ARGUED]**
P.O. Box 1047
Christiansted, VI 00821
    *Counsel for Appellant*

Adam Sleeper **[ARGUED]**
Meredith J. Edwards
Gretchen C.F. Shappert
Office of United States Attorney
5500 Veteran's Drive
United States Courthouse, Suite 260
St. Thomas, VI 00802

Melissa Ortiz
Office of United States Attorney
1108 King Street
Suite 201
Christiansted, VI 00820
    *Counsel for Appellee*

_____

OPINION

_____

MATEY, *Circuit Judge*.

The United States Attorney for the District of the Virgin Islands obtained an indictment against Jacinta Gussie for fraud. Then, prosecutors learned one of the grand jurors might have been a victim of Gussie's scheme. So the Government obtained a Superseding

Indictment and brought Gussie to trial, where a jury found her guilty. That chain of events, Gussie argues, renders her conviction unlawful. But the Superseding Indictment cured any potential defect, making any error harmless. So we will affirm her conviction.

## I.

In 2016, a federal grand jury returned a unanimous indictment against Gussie and her co-defendants. In early 2017, the United States Attorney's Office learned that one of the grand jurors who voted to indict Gussie was apparently a victim of the scheme charged.[1] After months of internal discussion, and out of an "abundance of caution," the Government obtained a Superseding Indictment from a new grand jury nearly one year later. JA 436.[2] A trial under that charging document followed, and Gussie was convicted and sentenced to forty-five months' imprisonment. She now appeals, arguing the Government's stumbles make her conviction unlawful. But Gussie

---

[1] How this occurred remains a mystery. The juror's full name was listed in the Original Indictment, and one exhibit presented to the grand jury noted the juror's name. True, no juror responded when the Government named the Defendants and asked if any juror had a connection. But the Government bears the responsibility to manage the grand jury, one part of their obligation to maintain a "sensitiveness to fair play." Robert H. Jackson, *The Federal Prosecutor*, 31 J. Crim. L. & Criminology 3, 6 (1940).

[2] Unsurprisingly, the Defendants objected to the Government's decision. One moved for dismissal, but the District Court denied the challenge viewing any error as harmless. Another appealed to this Court, but there was no conviction, and so no final decision. *United States v. Alexander*, 985 F.3d 291 (3d Cir. 2021).

suffered no prejudice facing charges under the validly returned Superseding Indictment, and we will affirm.

## II.

Gussie presents two points of error.[3] First, that allowing an alleged victim to sit on the grand jury considering an indictment against her was "so prejudicial" that it caused the grand jury "no longer to be a grand jury," requiring dismissal with prejudice. Second, the Superseding Indictment exceeded the statute of limitations because the Original Indictment was not validly pending when the Superseding Indictment returned. We disagree with both conclusions.

### A.    Any Grand Jury Error Was Not Structural

We begin with remedies, not rights, as that is enough to decide this case.[4] In 1991, the Supreme Court divided constitutional errors

---

[3] The District Court had jurisdiction under 48 U.S.C. § 1612 and 18 U.S.C. § 3231, and we have jurisdiction under 28 U.S.C. § 1291. The Government argues both issues on appeal are forfeited as Gussie does not reference the record in her briefs. *See Norman v. Elkin*, 860 F.3d 111, 129 (3d Cir. 2017). But we have discretion here, *see Kost v. Kozakiewicz*, 1 F.3d 176, 182 (3d Cir. 1993), and because Gussie's arguments raise only easily understood legal issues, we will decide them.

[4] The District Court stated that the Fifth Amendment creates a "right to indictment by an unbiased grand jury." JA 442 (*citing Costello v. United States*, 350 U.S. 359, 363 (1956) *and United States v. Serubo*, 604 F.2d 807, 816 (3d Cir. 1979)). But those cases considered instances of grand jury bias caused by "intentional and systematic" discrimination, *see, e.g.*, *Vasquez v. Hillery*, 474 U.S. 254,

involving criminal cases into two groups: trial error and structural error.[5] *Arizona v. Fulminante*, 499 U.S. 279, 306–10 (1991). Structural error occurs, for example, when the "structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 257 (1988). Structural errors "defy analysis by harmless-error standards" because of the "difficulty of assessing the effect of the error." *United States v. Gonzalez-Lopez*, 548 U.S. 140, 148 & n.4 (2006) (cleaned up). And

262–64 (1986) (defendant was "indicted by a grand jury from which members of a racial group purposefully ha[d] been excluded"); *Pierre v. State of Louisiana*, 306 U.S. 354, 362 (1939) (prosecution systematically excluded individuals from grand and petit juries for at least two decades based solely on their race), and other prosecutorial misconduct that is "something other than an isolated incident unmotivated by sinister ends" or "has become entrenched and flagrant in the circuit." *Serubo*, 604 F.2d at 817 (internal quotation marks omitted) (prosecution's graphic description of violence and implication that defendants were linked to organized crime). The Government's blunder here lacks the malice that marks the malfeasance in these cases. So we will merely assume a due process violation given the lack of prejudice to Gussie under harmless error review.

[5] The structural error doctrine "recognized that some constitutional errors require reversal without regard to the evidence in the particular case." *Rose v. Clark*, 478 U.S. 570, 577 (1986) (citing *Chapman v. California*, 386 U.S. 18, 23 n.8 (1967)). The "defining feature of a structural error is that it 'affect[s] the framework within which the trial proceeds,' rather than being 'simply an error in the trial process itself.'" *Weaver v. Massachusetts*, 137 S. Ct. 1899, 1907 (2017) (quoting *Fulminante*, 499 U.S. at 310).

mirroring the demands of due process, *see supra* note 4, the Supreme Court has only recognized structural error in the intentional and systematic exclusion of potential grand jurors based on race or sex. *See Vasquez v. Hillery*, 474 U.S. 254, 264 (1986); *Ballard v. United States*, 329 U.S. 187, 195 (1946). Egregious acts well beyond the present facts.

That is why the error here was not structural, a point already made in our companion opinion, *Alexander*, when we examined the same issue arising from Gussie's co-defendant. We explained that Alexander's arguments "do not support the conclusion that the defect here was 'so fundamental that it cause[d] the grand jury no longer to be a grand jury.'" *Alexander*, 985 F.3d at 297 (alteration in original) (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 802 (1989)). Rather, the error was discrete and definable, and its impact was not "too subtle and too pervasive to admit of confinement to particular issues or particular cases." *Peters v. Kiff*, 407 U.S. 493, 503 (1972). An alleged victim considering the Original Indictment had some knowledge about Gussie's actions—knowledge that helped produce a True Bill that otherwise might not have been returned. That problem can be discerned, assessed, and cured.

That means we consider Gussie's claim for harmless error. *See United States v. Stevenson*, 832 F.3d 412, 427 (3d Cir. 2016). Usually, we assess harmless error by asking whether there is "grave doubt" that "the violation substantially influenced the grand jury's decision to indict." *Bank of Nova Scotia*, 487 U.S. at 256 (quoting *United States v. Mechanik*, 475 U.S. 66, 78 (1986) (O'Connor, J., concurring)). And any prejudice must be shown to preclude remedies other than dismissal. *See United States v. Soberson*, 929 F.2d 935, 940 (3d Cir. 1991).

Like the District Court, we will assume prejudice in the return of the Original Indictment and examine cures short of dismissal. Because if a remedy "neutralize[s] the taint," *United States v.*

6

*Morrison*, 449 U.S. 361, 365 (1981), of the Original Indictment, then Gussie's claim cannot prevail.

The District Court correctly concluded that the Superseding Indictment provides that cure. The taint is identifiable and quantifiable: a biased grand juror may have influenced the grand jury's deliberations. Returned by an unbiased grand jury, the Superseding Indictment neutralized that threat. By restarting the legal process with an evidently neutral grand jury, and obtaining a conviction from Gussie's peers, the Government "tailor[ed] relief appropriate [to] the circumstances." *Id.* As a result, there is no harmful error, and Gussie's challenge to the indictment was properly denied.

## B.      The Original Indictment Was Validly Pending

Gussie also argues that the Government did not obtain the Superseding Indictment within the time allowed by Congress. The statute of limitations here is five years, 18 U.S.C. § 3282, and the latest charged offense in the Original Indictment occurred in July 2012. The Original Indictment came in September 2016, within the five-year deadline. The Superseding Indictment did not come until October 2018, outside the statutory window.

But an indictment stops the statute of limitations clock, so the Government may bring a superseding indictment at "any time while the first indictment is still validly pending, if and only if it does not broaden the charges made in the first indictment[.]" *United States v. Friedman*, 649 F.2d 199, 203 (3d Cir. 1981). Gussie does not argue the Superseding Indictment deviated from the Original, so the Government acted within bounds if the Original Indictment was validly pending. Gussie's argument is straightforward: the original grand jury was tainted, making any action "invalid," so the Original Indictment could not be validly pending. The Government contends that an indictment is validly pending "even if it is not *valid*."

7

The Government has the better case,[6] and the facts of *Friedman* are illustrative. There, the Government obtained an indictment that failed to state a federal charge (by omitting, in most of the counts, the "jurisdictional amount of" the fraud). *Friedman*, 649 F.3d at 202. Correcting its error, the Government filed a superseding indictment after the applicable statute of limitations had expired. *Id.* at 202–03. Compounding the confusion, the Government proceeded to trial on the superseding indictment before the original indictment was dismissed. *Id.* Nonetheless, we explained the original indictment was validly pending, despite failing to state a federal charge, making the superseding indictment timely. *Id.* at 203. As a result, where a superseding indictment is filed, "the day on which the original indictment was filed controls for statute of limitation purposes," if "the superseding indictment does not materially broaden or substantially amend the charges in the first." *United States v. Oliva*, 46 F.3d 320, 324 (3d Cir. 1995).

That is the case here. No matter the possible defect in the Original Indictment returned against Gussie, it remained validly pending at the time of the Superseding Indictment. Since the Superseding Indictment did not make any substantial changes, the charges were returned within the statute of limitations.

## C.   Gussie's Remaining Challenges

Gussie argues that the Government's mishandling of the grand jury shows prosecutorial misconduct warranting dismissal of this case. Particularly the still-unexplained delay before informing Gussie of the grand jury defect. These are not insubstantial issues. Before and after the Founding, Americans have enjoyed "the great and inestimable privilege of being tried by their peers of the vicinage, according to the

---

[6] Which does not suggest satisfaction with the Government's management and delay.

course of that law." Declaration and Resolves of the First Continental Congress Resolution 5 (1774), available at https://avalon.law.yale.edu/18th_century/resolves.asp; *see also Hurtado v. People of State of Cal.*, 110 U.S. 516, 539 (1884) (Harlan, J., dissenting) (describing the grand jury right as one of the institutions that "antedates the establishment of our institutions" and "which no government could rightfully impair or destroy"). Here, the Government's failure to give appropriate attention to the composition of the grand jury hindered the "course of the law," and injured the essential trust necessary between the people and their government. *Hurtado*, 110 U.S. at 530 (Harlan, J., dissenting).

But dismissal "is an extreme sanction which should be infrequently utilized." *United States v. Birdman*, 602 F.2d 547, 559 (3d Cir. 1979). And "absent demonstrable prejudice, or substantial threat thereof, dismissal of the indictment is plainly inappropriate, even though the violation may have been deliberate." *Morrison*, 449 U.S. at 365. While Gussie claims the Government knew the juror was a possible victim and permitted the juror's participation, the District Court found no supporting facts for that assertion. We see no clear error in that conclusion, which followed an *in camera* review of the grand jury proceedings.[7]

---

[7] For the same reasons, we also reject Gussie's contention that the "egregious" nature of the misconduct warrants dismissal. The challenged conduct must be shocking and outrageous. *See United States v. Nolan-Cooper*, 155 F.3d 221, 230–31 (3d Cir. 1998). The Government's conduct was "at worst . . . sloppy or negligent," JA 460, but it did not meet the high bar required.

9

Finally, Gussie argues the Government violated "the purpose" of Federal Rule of Criminal Procedure 6,[8] which should prompt a dismissal. But the Rule's text does not prohibit a victim from being part of the grand jury. And even assuming it did, it would be subject to harmless error review, *Bank of Nova Scotia*, 487 U.S. at 256, where it would fail for the reasons already discussed.

## III.

For these reasons, we will affirm the District Court's judgment.

---

[8] Rule 6(d)(2) says, "[n]o person other than the jurors, and any interpreter needed to assist a hearing-impaired or speech-impaired juror, may be present while the grand jury is deliberating or voting." Fed. R. Crim. P. 6(d)(2).